**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ASHLEY PIERRELOUIS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GOGO INC., MICHAEL J. SMALL, OAKLEIGH THORNE, NORMAN SMAGLEY, BARRY ROWAN, and JOHN WADE,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Ashley Pierrelouis ("Plaintiff"), by Plaintiff's undersigned attorneys, individually and on behalf of all other persons similarly situated, alleges the following based upon personal knowledge as to Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Gogo Inc. ("Gogo" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than Defendants and their affiliates, who purchased or otherwise acquired publicly traded securities of Gogo from February 27, 2017 through May 7, 2018, inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws (the "Class").

**JURISDICTION AND VENUE**

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 8 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4.      Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as the Company conducts business and is headquartered in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6.      Plaintiff, as set forth in the attached Certification, acquired Gogo securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.      Defendant Gogo, through its subsidiaries, provides inflight broadband connectivity and wireless entertainment services to the aviation industry in the United States and internationally. Gogo is a Delaware corporation with its headquarters located at 111 North Canal Street, Suite 1500, Chicago, Illinois 60606. Gogo securities trade on the NASDAQ under the ticker symbol "GOGO."

8.      Defendant Michael J. Small ("Small") served as the Company's Chief Executive Officer ("CEO") and President from February 16, 2010 until March 4, 2018.

9.      Defendant Oakleigh Thorne ("Thorne") has served as the Company's CEO and President since March 4, 2018. Thorne served on the Board of Directors of Gogo since 2006 and remains a director.

10.      Defendant Norman Smagley ("Smagley") served as the Company's Chief Financial Officer ("CFO") from September 2010 until May 4, 2017.

11.      Defendant Barry Rowan ("Rowan") has been the Company's CFO since May 4, 2017.

12.      Defendant John Wade ("Wade") has been the Company's Chief Operating Officer ("COO") and Executive Vice President since August 2016.

13.      Defendants Small, Thorne, Smagley, Rowan, and Wade are sometimes referred to herein as the "Individual Defendants."

3

14.     Each of the Individual Defendants:

    a.   directly participated in the management of the Company;

    b.   was directly involved in the day-to-day operations of the Company at the highest levels;

    c.   was privy to confidential proprietary information concerning the Company and its business and operations;

    d.   was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    e.   was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

    f.   was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

    g.   approved or ratified these statements in violation of the federal securities laws.

15.     Gogo is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

16.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Gogo under *respondeat superior* and agency principles.

17.     Defendant Gogo and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Gogo's 2Ku system is an antenna and satellite-based system which provides additional bandwidth and improved speeds for wi-fi on airplanes.

### Materially False and Misleading Statements Issued During the Class Period

19.     On February 27, 2017, Gogo filed an annual report on Form 10-K for the fiscal year ended December 31, 2016 (the "2016 10-K") with the SEC, which provided the Company's annual financial results and position. The 2016 10-K was signed by Defendants Small and Smagley. The 2016 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Small and Smagley attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

20.     The 2016 10-K discussed the Company's 2Ku antenna and its installation, stating in relevant part:

> Reduce Our Investment per Aircraft
>
> Our investment per aircraft is the installed cost of airborne equipment less the proceeds received from the airline. In 2016, we significantly reduced the installation cost per 2Ku aircraft by shortening the installation time from eight days to three days, and reduced equipment cost through engineering improvements and volume discounts. Furthermore, based on agreed-upon terms for our 2Ku awarded but uninstalled aircraft, proceeds from airlines as a percentage of 2Ku installation costs will increase from 2017 to 2018. In addition, our ability to leverage our growing portfolio of supplemental type certificates ("STCs") will further reduce the cost of and time required to install new fleets.
>
> *       *       *
>
> We started rolling-out our 2Ku service during 2016. As of December 31, 2016, 2Ku was installed on 94 CA aircraft operated by five airline partners and an additional 450 to 550 aircraft are expected to be installed during 2017. Our ability to meet our installation schedule is dependent on certain variables not within our

control, including the availability of aircraft and the speed with which we are able to obtain STCs from the FAA and similar foreign regulatory agencies for our 2Ku equipment.

21.     The 2016 10-K discussed the Company's liquidity, stating in relevant part:

Liquidity:

Although we can provide no assurances, we currently believe that cash, cash equivalents and short-term investments on hand as of December 31, 2016 will be sufficient to meet our working capital and capital expenditure requirements for at least the next twelve months, including installing our ATG-4 and Ku equipment on certain aircraft operated by our airline partners, costs related to international expansion, costs associated with launching and installing our 2Ku technology and costs associated with developing our next generation ATG solution.

22.     On February 22, 2018, Gogo issued a press release entitled, "Gogo Announces Fourth Quarter and Full-Year 2017 Financial Results" which included guidance for 2018, stating in relevant part:

For the full year ending December 31, 2018, the Company expects:

- Total revenue of $865 million to $935 million (or $750 million to $790 million under ASC 605, an increase of 7% to 13% from 2017)

    - CA-NA revenue of $445 million to $485 million, of which approximately 20% is equipment revenue (or $380 million to $415 million under ASC 605)

    - CA-ROW revenue of $125 million to $165 million, of which approximately 50% is equipment revenue (or $75 million to $90 million under ASC 605)

    - BA revenue of $285 million to $295 million (same as under ASC 605)

- ***Adjusted EBITDA of $75 million to $100 million (or $65 million to $90 million under ASC 605, an increase of 11% to 54% from 2017).*** We estimate that 2018 Adjusted EBITDA under ASC 605 would be approximately $15 million higher when adjusting for the accounting impact of the airline-directed model.

- An increase of 550 to 650 2Ku aircraft online, of which approximately 300 are expected to be in CA-ROW. Total 2Ku aircraft online as of December 31, 2018 of 1,100 to 1,200.

- Gross capital expenditures of $150 million to $170 million and Cash CAPEX of $110 million to $130 million, of which approximately 35% is related to airborne Cash CAPEX. In addition, we expect airborne equipment inventory purchases related to airline-directed installations of $15 million to $30 million.

***Free Cash Flow is expected to improve from 2017 to 2018 driven by Adjusted EBITDA growth and lower Cash CAPEX.*** The Company reaffirms its target of becoming Free Cash Flow positive in 2019 and for the full year 2020. The Company will provide an update to its other long-term targets under ASC 606 on the Company's first quarter 2018 earnings conference call in May 2018.

(Emphasis added.)

23.     On February 22, 2018, the Company held a conference call to discuss its fourth quarter of 2017 earnings. On the call, Defendant Wade discussed some issues facing the 2Ku antennas, stating in relevant part:

As we've mentioned in earlier releases, we've shortened installation times for 2Ku to as low as 30 hours, which is less than half the time it typically takes to install a broadband satellite system. We continue to focus on helping our airline partners achieve installation process efficiencies. Our extraordinary pace of 2Ku installs and modem upgrades has not been without its challenges. The performance of the systems has been expected; however, any time you introduce high-tech systems of this scale and speed we've been doing it, there are likely to be early-stage growing pains. 2Ku is not exempt from that phenomenon; on some aircraft we saw degraded reliability. ***We've identified the root cause of all of these issues, and have fixes for all of them that have either been deployed or in the process of being deployed.*** By midyear 2018, we expect the entire 2Ku fleet to operate at the same market-leading performance levels that most 2Ku aircrafts are now achieving.

\*       \*       \*

***And on the reliability issues. It was actually really caused by the de-icing fluid, which was able to penetrate under some of the [radar,] which caused the antennas to temporarily get sticky, if you will. The fix to that was very easy to do, and we've deployed that on a number of aircraft*** and we're not seeing any further issues around that at this time.

(Emphasis added).

24.     On February 22, 2018, after the market closed, Gogo filed an annual report on Form 10-K for the fiscal year ended December 31, 2017 (the "2017 10-K") with the SEC, which provided the Company's annual financial results and position. The 2017 10-K was signed by Defendants Small and Rowan. The 2017 10-K contained signed SOX certifications by Defendants Small and Rowan attesting to the accuracy of financial reporting, the disclosure of

any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

25.     The 2017 10-K discussed the Company's 2Ku and its installation, stating in relevant part:

> In 2014, we announced our next generation 2Ku global satellite system ("2Ku"), which has become the most rapidly adopted technology in the industry. Sixteen domestic and international airlines have selected 2Ku for installation on approximately 2,000 commercial aircraft and as of December 31, 2017, our 2Ku system had been installed on more than 550 aircraft. Of the aircraft installed with 2Ku in 2017, 298 were upgrades from currently-installed Gogo systems. The 2Ku system is currently capable of delivering peak speeds of 100 Mbps to the aircraft. We also continue to innovate and improve our North American terrestrial networks by developing and deploying a next-generation air-to-ground network ("ATG-NG"), which will be commercially available in 2018 for both commercial aviation and business aviation aircraft. ATG-NG has achieved speeds in excess of 100 Mbps in testing, a ten-fold increase from the speed of our current ATG-4 system ("ATG-4"). Our leading global market share supports our continued investment in ongoing research and development and the global operating capabilities required to support our aviation partners' needs. Our technology roadmap includes plans for continued rapid improvement in bandwidth speeds and other performance metrics of our inflight systems.

*     *     *

> We also recently introduced a proprietary next generation modem into CA service, which enhances our 2Ku and Ku solutions. Our new modem was installed on 284 aircraft at December 31, 2017 and is expected to be on all 2Ku and Ku aircraft by the end of 2018. This modem is capable of increasing throughput from the satellite to the aircraft by approximately 16 times as compared to our prior generation modem, and greatly reduces hand-off time between satellites compared to our previous generation modem.

*     *     *

> **Reduce Our Investment per Aircraft**
>
> In CA, we define investment per aircraft as the installed cost of airborne equipment less the proceeds received from an airline partner. Our investment per aircraft varies depending on the commercial terms of our contract with the airline, the technology deployed, and the type of aircraft equipment installed. In 2017, we significantly reduced the installation cost per 2Ku aircraft by shortening the installation time from a week to under two days, and reduced equipment costs

8

through engineering improvements and volume discounts. Our ability to leverage our growing portfolio of STCs will further reduce the cost and time required to install new fleets. We currently have STCs and service bulletins for approximately 80% of the available aircraft types to be equipped with 2Ku. This broad portfolio allows us to reuse STCs to reduce the time and cost required to obtain certification and to accelerate installation schedules. In addition, as 2Ku's performance has been demonstrated, the amount of our CA revenue derived from airborne equipment has increased as more 2Ku systems are sold at a price higher than the price of other Gogo systems. As our investment per aircraft declines and [average revenue per aircraft ("ARPA")] increases, our return on invested capital increases and the payback period is shortened.

26.     The statements referenced in ¶¶19-25 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Gogo's 2Ku antenna had more reliability issues than the public was led to believe; (2) Gogo's 2Ku antennas required costly installation and remediation challenges or required replacement due to deicing fluids from planes infiltrating the 2Ku system as well as manufacturing and software issues; (3) consequently, Gogo would not be able to meet its previously issued 2018 guidance; and (4) as a result, the Company's financial statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

27.     On May 4, 2018, Gogo held a conference call to discuss its first quarter of 2018 earnings. On the call, Defendant Thorne addressed the de-icing issues and the 2Ku installation, stating in relevant part:

We are achieving the 98% coverage and we're achieving average 15 megabits per second speed globally, but we slipped on the 98% system availability with our deicing problems.

\*          \*          \*

I'm not going to go into all of our objectives and initiatives, but I'd like to give you a taste for what we're up to and how that will drive my four priorities. So

let's start with the quality priority. Our first quality priority is, obviously, fixing 2Ku. Last summer, 2Ku was our the most successful product launch ever with greater than 98% service availability. And then came winter and availability plunged down to the mid 80s. ***The major cause with deicing fluid getting into the antenna raceways in which the antenna discs spin.***

***We've done a thorough analysis of root causes and discovered that while deicing was the biggest issue there are also some manufacturing issues and software issues at fall. We also discovered the deicing fluid entered the antenna ray down through far more pathways than we originally thought. We fixed the software issues and we fixed the manufacturing issues.*** We are in the process of replacing all contaminated antennas of by the end of this quarter. Our goal was to hit 95% availability by June 30. And I want to repeat this week we are at 96%. So we're well ahead of plan.

In the second half of this year, we are planning to roll out a set of 2Ku modifications that will keep deicing fluid out of the raceways and get us back to our target of 98% system availability. The benefits of getting 2Ku operating well again are obvious. First, we will get uptick in penetration rates in ARPA, and two prospective airlines will have confidence that the product will work and hopefully sign valuable contracts.

(Emphasis added).

28.     On the earnings call, Defendant Rowan spoke about the de-icing issues and its financial impact, stating in relevant part:

***Adjusted EBITDA is expected to be below the previously provided range of $75 million to $100 million due to increased costs and lost revenue related to the 2Ku implementation challenges we cited.***

\*       \*       \*

With regard to the primary expense buckets related to the issues associated with the deicing, there are several of them. First, as Oak described, ***we are replacing antennas. So there's an incremental cost of antenna purchases. There's also the cost of additional airline touches and the work associated with that, and the maintenance personnel.*** So those are some of the primary buckets that we see. And also it's important to recognize the revenue impact of this, in that the airlines are not going to be motivated to market aggressively until they see the 2Ku system performing at the level that we all expect, and to that point that they can be more aggressive in the marketing and drive the revenues as we planned.

(Emphasis added).

29.    Further on May 4, 2018, Gogo issued a press release entitled "Gogo Announces First Quarter 2018 Financial Results." The press release disclosed that the Company had to restate some of its guidance for 2018, stating in relevant part:

> The Company is withdrawing its previously provided 2018 guidance for Adjusted EBITDA, airborne Cash CAPEX, and airborne equipment inventory purchases related to airline-directed installations, as well as Free Cash Flow guidance. The Company is currently undergoing an integrated business planning process to evaluate ways to further drive revenue growth, streamline business processes, prioritize operational initiatives and improve its cost structure.

30.    On this news, the Company's shares fell $1.73 per share or over 18% over the next two trading days to close at $7.86 per share on May 7, 2018, damaging investors.

31.    On May 7, 2018, after the market closed, Moody's downgraded Gogo's credit rating, stating in relevant part:

> New York, May 07, 2018 -- Moody's Investors Service (Moody's) downgraded Gogo Inc.'s (Gogo) corporate family rating (CFR) to Caa1 from B3, downgraded the company's probability of default rating (PDR) to Caa1- PD from B3-PD, and changed the outlook to negative. Moody's also downgraded Gogo's speculative grade liquidity (SGL) rating to SGL-3 from SGL-2. The company's B2 senior secured rating was affirmed. The downgrade of Gogo's CFR and change in outlook to negative reflects the company's weakening credit metrics, operational difficulties and deteriorating liquidity. The downgrade of Gogo's SGL rating to SGL-3 reflects Moody's expectation that Gogo's liquidity will weaken.
>
> *        *        *
>
> RATINGS RATIONALE
>
> Gogo's Caa1 CFR reflects its small scale, competitive operating environment, low margins, high leverage (12.9x Moody's adjusted at year end 2017), and the expectation of negative free cash flow into at least 2019 as the company heavily invests in the rollout of in-flight connectivity technology to additional carriers outside the North American market, where it currently benefits from critical mass in the commercial aviation segment and a dominant position in business aviation. The rating is supported by this currently strong North American market position, long-term carrier contracts, difficult barriers to entry, and diversified carrier relationships. Gogo's revenue growth profile, which is driven by international expansion and capacity and connectivity upgrades, is dependent on depleting cash balances to fund negative operating cash flow during a protracted growth phase.

Despite a strong performance from Gogo's business aviation segment in the first quarter of 2018, both of the company's two commercial aviation segments -- CA-NA and CA-ROW -- had weak operating performance which diminished consolidated results. ***The performance degradation of antennas in many recently installed 2Ku radomes caused by the infiltration of de-icing fluid, used to remove ice from fuselages in winter climates, resulted in slower performance of the company's 2Ku technology, as well as significant remediation costs. Company adjusted EBITDA margin for the first quarter of 2018 was about 5%, down almost 1.5% from the prior year's quarter. These operational issues are expected to negatively impact EBITDA for the year and result in a very low, or potentially slightly negative, company adjusted EBITDA for the second quarter of 2018 since the bulk of remediation expenses will be incurred during the quarter***. While Gogo believes it will have all operational issues related to this execution setback addressed by early summer, visibility is very limited as to the timing of any reversal of current negative revenue and EBITDA trends. Gogo also announced a series of leadership and organizational changes in April 2018, including the hiring of a new CEO. The company is midway through implementation of a new business plan focused on service quality improvement, revenue growth and cost structure optimization, with a June completion date targeted.

Moody's expects deteriorating operating performance in 2018 and projects Moody's adjusted leverage to remain above 12x. A rapidly declining cash balance will likely impair operating flexibility in 2019. More importantly, and with $362 million of convertible notes coming due on March 1, 2020, Moody's believes a near term refinancing is critical for Gogo to improve its long-term liquidity outlook.

Gogo's SGL-3 short-term liquidity rating indicates Moody's expectation that the company will sustain adequate liquidity through the next 12 to 18 months, but not beyond, with its existing cash balance. We expect negative free cash flow of at least $150 million over the next 12 months due to continued operating performance deterioration and a likely protracted reversal of current negative trends. As of March 31, 2018, Gogo had $300 million in cash and short term investments and no revolver outstanding, and faces a $362 million convertible notes maturity in about 22 months. Given the company's cash usage rate, the SGL rating would likely be downgraded to SGL-4 if these convertible notes are not refinanced by the end of the third quarter of 2018.

***The negative outlook reflects Moody's expectation that operating metrics will remain weak in 2018.*** If negative free cash flow is greater than Moody's anticipates or if the company fails to improve overall liquidity and address its $362 convertible note maturity due March 2020 by the end of the third quarter of 2018, Moody's could further downgrade the ratings.

Given the expectation for high leverage and negative free cash flow, an upgrade is unlikely. However, upward rating pressure would ensue if Gogo were on a path towards sustainable free cash flow generation. Downward rating pressure could develop if liquidity becomes further strained, revenue growth does not turn positive, or if the company is unable to migrate towards free cash flow generation and improve that free cash flow profile over time. Additionally, debt financed acquisitions and investments which result in a deterioration in cash flow or a material increase in leverage could result in a downgrade.

(Emphasis added.)

32.     On this news, the Company's shares fell $2.80 per share or over 35.6% to close at $5.06 per share on May 8, 2018, damaging investors.

33.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities Plaintiff and other Class members have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Gogo securities publicly traded on NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Gogo securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class

may be identified from records maintained by Gogo or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

   a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

   b.     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Gogo;

   c.     whether the Individual Defendants caused Gogo to issue false and misleading financial statements during the Class Period;

   d.     whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

   e.     whether the prices of Gogo securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

    f.      whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

40.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

    a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b.      the omissions and misrepresentations were material;

    c.      Gogo securities are traded in an efficient market;

    d.      the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

    e.      the Company traded on the NASDAQ and was covered by multiple analysts;

    f.      the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

    g.      Plaintiff and members of the Class purchased, acquired and/or sold Gogo securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### FIRST CLAIM FOR RELIEF
**Violations of Section 10(b) of The Exchange Act and Rule 10b-5**
**Against All Defendants**

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Gogo securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise

acquire Gogo securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

46.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Gogo securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Gogo's finances and business prospects.

47.     By virtue of their positions at Gogo, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

48.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Gogo securities from their personal portfolios.

49.     Gogo showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or

directors of Gogo, the Individual Defendants had knowledge of the details of Gogo's internal affairs.

50. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Gogo. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Gogo's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Gogo securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Gogo's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Gogo securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

51. During the Class Period, Gogo securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Gogo securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class,

the true value of Gogo securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Gogo securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

52.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**SECOND CLAIM FOR RELIEF**
**Violations of Section 20(a) of The Exchange Act**
**Against The Individual Defendants**

54.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.     During the Class Period, the Individual Defendants participated in the operation and management of Gogo, and conducted and participated, directly and indirectly, in the conduct of Gogo's business affairs. Because of their senior positions, they knew the adverse non-public information about Gogo's current financial position and future business prospects.

56.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Gogo's business practices, and to correct promptly any public statements issued by Gogo which had become materially false or misleading.

57.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Gogo disseminated in the marketplace during the Class Period concerning the Company's business, operational and accounting policies. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Gogo to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Gogo within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Gogo securities.

58.     Each of the Individual Defendants, therefore, acted as a controlling person of Gogo . By reason of their senior management positions and/or being directors of Gogo, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Gogo to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Gogo and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

59.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Gogo.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as her reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: June 27, 2018                              Respectfully submitted,

                                                   /s/ Carl V. Malmstrom
                                                  Carl V. Malmstrom
                                                  **WOLF HALDENSTEIN ADLER**
                                                    **FREEMAN & HERZ LLC**
                                                  70 W. Madison St., Suite 1400
                                                  Chicago, IL 60602
                                                  Tel: (312) 984-0000
                                                  Fax: (312) 214-3110
                                                  malmstrom@whafh.com

                                                  Laurence M. Rosen, Esq.
                                                  Phillip Kim, Esq.
                                                  **THE ROSEN LAW FIRM, P.A.**
                                                  275 Madison Ave, 34th Floor
                                                  New York, NY 10016
                                                  Tel: (212) 686-1060
                                                  Fax: (212) 202-3827
                                                  lrosen@rosenlegal.com
                                                  pkim@rosenlegal.com

                                                  *Counsel for Plaintiff*

whafhch55520

21