**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ASHLEY PIERRELOUIS, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>     v.<br><br>GOGO INC., MICHAEL J. SMALL, NORMAN SMAGLEY, BARRY ROWAN, and JOHN WADE,<br><br>     Defendants. | Case No. 18-cv-04473<br><br>Hon. Jorge L. Alonso |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

Jonathan S. Quinn
Andrew G. May
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Chicago, IL 60602
(312) 269-8000
jquinn@nge.com
amay@nge.com

Jerome S. Fortinsky (admitted *pro hac vice*)
Brian H. Polovoy (admitted *pro hac vice*)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000
jfortinsky@shearman.com
bpolovoy@shearman.com

*Attorneys for Defendants Gogo Inc.,*
*Michael J. Small, Norman Smagley,*
*Barry Rowan and John Wade*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

      A.    Background ...................................................................................... 2

      B.    Gogo's 2Ku System ......................................................................... 3

      C.    Summary Of Plaintiffs' Claims ...................................................... 6

ARGUMENT ............................................................................................................................ 8

I.     PLAINTIFFS FAIL TO PLEAD SECURITIES FRAUD UNDER
SECTION 10(b) ......................................................................................... 8

      A.    Plaintiffs Fail To Plead That Any Statement Was False When
Made ............................................................................................... 9

            1.    Plaintiffs Fail To Plead Facts Showing That Defendants'
Pre-November 2017 Statements Were False When Made ........... 10

            2.    Plaintiffs Fail To Plead Facts Showing That Defendants'
Statements In November And December 2017 Were False
When Made ................................................................................ 12

            3.    Plaintiffs Fail To Plead Facts Showing That The February
22, 2018 Statements Were False When Made ............................ 14

      B.    Defendants' Forward-Looking Statements Regarding Expected
Cost Declines And Increased Adjusted EBITDA In 2018 Are Not
Actionable Under The PSLRA Safe Harbor ............................... 16

            1.    The Statements Of Expectation Were Identified As
Forward-Looking And Were Accompanied By Meaningful
Cautionary Language ................................................................ 17

            2.    Plaintiffs Fail To Plead That Defendants Actually Knew
Their Statements Were False Or Misleading ............................. 20

      C.    Plaintiffs Fail To Plead That Any Defendant Acted With The
Intent To Defraud ........................................................................ 20

            1.    Plaintiffs Have Not Pleaded That Any Of Defendants Knew
Or Recklessly Disregarded Any Design Problems With
Gogo's 2Ku Systems................................................................. 21

2. Plaintiffs Have Not Alleged Any Stock Sales Or Any Other Motive To Commit Fraud ............................................................ 26

II. PLAINTIFFS FAIL TO PLEAD CONTROL PERSON LIABILITY UNDER SECTION 20(a) ...................................................................... 28

CONCLUSION.................................................................................................... 29

# **TABLE OF AUTHORITIES**

**Cases**                                                             **Page(s)**

*Arazie v. Mullane,*
   2 F.3d 1458 (7th Cir. 1993) ..............................................................................14

*Asher v. Baxter Int'l Inc.,*
   377 F.3d 727 (7th Cir. 2004) ...........................................................................19

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)............................................................................................9

*In re Biogen Inc. Sec. Litig.,*
   193 F. Supp. 3d 5 (D. Mass. 2016) ..................................................................27

*Boca Raton Firefighters' & Police Pension Fund v. DeVry, Inc.,*
   2012 WL 1030474 (N.D. Ill. Mar. 27, 2012).............................................12, 13, 27

*In re Cabletron Sys., Inc.,*
   311 F.3d 11 (1st Cir. 2002) ..............................................................................13

*In re Career Educ. Corp. Sec. Litig.,*
   2007 WL 1029092 (N.D. Ill. Mar. 29, 2007), *vacated pursuant to settlement,*
   2008 WL 8666579 (N.D. Ill. June 26, 2008) ..................................................2, 13

*In re Century Bus. Servs. Sec. Litig.,*
   2002 WL 32254513 (N.D. Ohio 2002) ..............................................................27

*In re Eros Int'l Sec. Litig.,*
   2017 WL 6405846 (S.D.N.Y. Sept. 22, 2017), *aff'd sub nom.*
   *Eisner v. Eros Int'l PLC*, 735 F. App'x 15 (2d Cir. 2018) ..................................25

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.,*
   778 F.3d 228 (1st Cir. 2015) ............................................................................27

*Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.,*
   2011 WL 1303387 (N.D. Ill. Mar. 31, 2011)......................................................9

*Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.,*
   2012 WL 1068761 (N.D. Ill. Mar. 29, 2012)....................................................21

*In re Harley-Davidson, Inc. Sec. Litig.,*
   660 F. Supp. 2d 969 (E.D. Wis. 2009)...............................................15, 20, 24

*Higginbotham v. Baxter Int'l, Inc.,*
   495 F.3d 753 (7th Cir. 2007) ......................................9, 10, 12, 15, 23, 25

*Hussain v. Fed. Express Corp.*,
  2013 WL 3337814 (N.D. Ill. July 2, 2013)....................................................................11

*IBEW Local 697 Pension Fund v. Ltd. Brands, Inc.*,
  788 F. Supp. 2d 609 (S.D. Ohio 2011) .......................................................................27

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
  513 F.3d 702 (7th Cir. 2008) ...............................................................................13, 21

*McCready v. eBay, Inc.*,
  453 F.3d 882 (7th Cir. 2006) ............................................................................2, 9, 11

*In re Midway Games, Inc. Sec. Litig.*,
  332 F. Supp. 2d 1152 (N.D. Ill. 2004) ........................................................................19

*Pension Tr. Fund for Operating Eng'rs v. DeVry Educ. Grp., Inc.*,
  2017 WL 6039926 (N.D. Ill. Dec. 6, 2017) ..........................................................8, 9, 12

*Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
  673 F. Supp. 2d 718 (S.D. Ind. 2009) ...................................................................27, 28

*Pugh v. Tribune Co.*,
  521 F.3d 686 (7th Cir. 2008) ...............................................................................21, 28

*Searls v. Glasser*,
  64 F.3d 1061 (7th Cir. 1995) ....................................................................................26

*Stavros v. Exelon Corp.*,
  266 F. Supp. 2d 833 (N.D. Ill. 2003) ...............................................................16, 19, 20

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008)...................................................................................................8

*Stransky v. Cummins Engine Co.*,
  51 F.3d 1329 (7th Cir. 1995) ......................................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...................................................................................2, 9, 21, 26

*Zerger v. Midway Games, Inc.*,
  2009 WL 3380653 (N.D. Ill. Oct. 19, 2009)...........................................................9, 11, 14

**Statutes**

15 U.S.C. § 78u-4(b)......................................................................................1, 9, 12, 20

15 U.S.C. § 78u-5(c).....................................................................................16, 20, 22

15 U.S.C. § 78u-5(i)(1) ...................................................................................................17

Defendants Gogo Inc. ("Gogo" or the "Company"), Michael J. Small, Norman Smagley, Barry Rowan, and John Wade (the "Individual Defendants") respectfully submit this memorandum and the accompanying Declaration of Brian H. Polovoy ("Polovoy Decl.") in support of their motion to dismiss the Amended Complaint ("Amended Complaint" or "AC") (Dkt. No. 55) pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(b).

## PRELIMINARY STATEMENT

This is a putative securities class action based on nothing more than "fraud by hindsight." Plaintiffs challenge statements made during the period from February 27, 2017 through February 22, 2018 by Gogo Inc., the leading global provider of inflight broadband connectivity and wireless entertainment to the aviation industry, concerning Gogo's 2Ku global satellite system ("2Ku"), an antenna and satellite-based system that provides additional bandwidth and improved speeds for internet service on airplanes. At the time each public statement was made, Gogo and its executives provided the best information they had, and the Amended Complaint does not make any factual allegation that would suggest that Gogo or any of the Individual Defendants had any information inconsistent with their statements at the time they were made.

Plaintiffs allege that defendants' statements were false and misleading because they did not disclose that the 2Ku system was not working as expected because of an "installation design defect" that, as the Company disclosed in May 2018, would ultimately require expensive repairs and increased costs. Plaintiffs' only basis for claiming that defendants knew during the period from February 27, 2017 through February 22, 2018 that the 2Ku system had a problem that would negatively affect Gogo's projections for 2018 is Gogo's subsequent announcement in May 2018 that it was withdrawing its previously provided guidance for 2018 because of increased

costs and lower revenue caused by the 2Ku issues, which started to become apparent when winter set in and de-icing fluid used to de-ice airplane fuselages in winter leaked into antenna radomes and caused service failures on some aircraft. Plaintiffs do not—and cannot—point to *any* specific contemporaneous information that was both available to defendants and inconsistent with their public statements at the time the statements were made. The Amended Complaint offers precisely the type of threadbare allegations that the PSLRA's heightened pleading standards and safe harbor were intended to weed out on an early motion.

The Amended Complaint should be dismissed because: (1) plaintiffs do not allege with particularity any facts showing that defendants' statements were false when made; (2) certain of defendants' statements are non-actionable under the PSLRA's safe harbor for forward-looking statements; and (3) plaintiffs have not alleged with particularity facts supporting a strong inference that any defendant acted with an intent to defraud. Indeed, the fact that Gogo's CEO significantly *increased* his stockholding in Gogo during the class period—*i.e.*, that he *purchased* large amounts of Gogo stock when, according to plaintiffs, he knew the stock price was artificially inflated—eviscerates any inference that defendants acted with an intent to defraud.

## STATEMENT OF FACTS[1]

### A. Background

This action was filed on June 27, 2018, by Ashley Pierrelouis, a purported purchaser of

---

[1] The statement of facts is based on the allegations of the Amended Complaint, which are deemed true solely for purposes of this motion, or from documents referred to in the Amended Complaint or other public documents filed with the SEC, of which the Court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider . . . sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.") (citations omitted); *In re Career Educ. Corp. Sec. Litig.*, 2007 WL 1029092, at *1 n.5 (N.D. Ill. Mar. 29, 2007) (same; court can also take judicial notice of SEC filings on a Rule 12(b)(6) motion), *vacated pursuant to settlement*, 2008 WL 8666579 (N.D. Ill. June 26, 2008).

Gogo common stock.  Dkt. No. 1.  On October 10, 2018, the Court appointed Maria Zingas and Daniel Rogers as lead plaintiffs.  Dkt. No. 41.  Notably, no institutional investor sought appointment as lead plaintiff.  Lead plaintiffs filed an Amended Complaint on December 10, 2018 on behalf of a putative class of purchasers of Gogo securities from February 27, 2017 through May 4, 2018 (the "putative Class Period").  AC ¶ 1.

Gogo, which is based in Chicago, is the leading provider of inflight broadband connectivity and wireless entertainment services in the United States and internationally.  *Id.* ¶ 17; Polovoy Decl., Ex. A (Gogo Inc. Form 10-K for year ended Dec. 31, 2017 ("2017 10-K")) at 2.  The Amended Complaint also asserts claims against Michael J. Small, Gogo's Chief Executive Officer ("CEO") and President from February 16, 2010 to March 4, 2018 (AC ¶ 18), Norman Smagley, Gogo's Chief Financial Officer ("CFO") from September 2010 to May 4, 2017 (*id.* ¶ 19), Barry Rowan, Gogo's CFO since May 4, 2017 (*id.* ¶ 20), and John Wade, Gogo's Chief Operating Officer and Executive Vice President since August 2016 (*id.* ¶ 21).

## B.    Gogo's 2Ku System

Plaintiffs assert claims based on defendants' statements during the putative Class Period about Gogo's next generation 2Ku global satellite system, which was announced in 2014.  AC ¶ 32.  Gogo began rolling out 2Ku in 2016 and, by the end of 2016, had installed the system on 94 aircraft and expected to install it on 450 to 550 more in 2017.  *Id.* ¶ 4; Polovoy Decl., Ex. B (Gogo Inc. Form 10-K for year ended Dec. 31, 2016 ("2016 10-K")) at 21.  As anticipated, by the end of 2017, Gogo had installed 2Ku on more than 550 aircraft.  AC ¶ 4; Polovoy Decl., Ex. A (2017 10-K) at 2.  At that time, the 2Ku system was capable of delivering peak speeds of 100 megabits per second to the aircraft.  Polovoy Decl., Ex. A (2017 10-K) at 2, 6.  According to Gogo's current CEO, Oakleigh Thorne, 2Ku was Gogo's "most successful product launch ever, with greater than 98% service availability" in summer 2017.  AC ¶ 62; Polovoy Decl., Ex. C

(Edited Transcript Q1 2018 Gogo Inc. Earnings Call, May 4, 2018 ("Q1 2018 Earnings Call
Tr.")) at 6.

Plaintiffs allege that in winter 2017-18, Gogo began to hear about problems with the
reliability of its 2Ku system, which were caused by de-icing fluid used to de-ice the fuselage of
aircraft in winter months.  AC ¶¶ 55-56.  In its February 22, 2018 earnings call (reporting results
for the fourth quarter of 2017 and 2017 as a whole), Gogo disclosed that it was experiencing
problems with the reliability of 2Ku.  *Id.* ¶¶ 122, 124; Polovoy Decl., Ex. D (Edited Transcript
Q4 2017 Gogo Inc. Earnings Call, Feb. 22, 2018 ("Q4 2017 Earnings Call Tr.")) at 4.
Specifically, Wade explained that "on some aircraft [installed with 2Ku] we saw degraded
reliability.  We've identified the root cause of all of these issues, and have fixes for all of them
that have either been deployed or [are] in the process of being deployed.  By midyear 2018, we
expect the entire 2Ku fleet to operate at the same market-leading performance levels that most
2Ku aircrafts are now achieving."  AC ¶ 122; Polovoy Decl., Ex. D (Q4 2017 Earnings Call Tr.)
at 4.

Similarly, in the risk factor section of its annual report on Form 10-K for the year ended
December 31, 2017, under the heading "[w]e may be unsuccessful or delayed in widely
deploying and operating our 2Ku technology," Gogo explained:

> We have encountered delays and quality problems as we deploy 2Ku, which we
> are in the process of remediating, and may continue to do so given the aggressive
> installation schedule that we are undertaking and the demands that the schedule
> places on employees, suppliers and other resources. . . . If 2Ku fails to perform as
> expected or we fail to meet the installation timelines and performance metrics for
> which we have contracted, our business, financial condition and results of
> operations may be materially adversely affected.

AC ¶ 130; Polovoy Decl., Ex. A (2017 10-K) at 25-26.  Gogo's 2017 10-K also warned in the
MD&A section that key factors that may affect the Company's future performance include
"costs associated with the implementation of, and our ability to implement on a timely basis our

4

technology roadmap, upgrades and installation of our . . . 2Ku . . . technologies (including

failures or delays on the part of antenna and other equipment developers and providers) . . . ."

Polovoy Decl., Ex. A (2017 10-K) at 56.

Several weeks later, on May 4, 2018, when the scope and cause of the issues with 2Ku

were more fully apparent and understood, Gogo's new CEO, Oakleigh Thorne, explained during

Gogo's earnings call for first quarter 2018 that a

> big issue in the quarter was the deicing fluid impact on 2Ku. . . . [T]he impact on
> Q1 was twofold. First, airlines held back on marketing the product, which hurt
> revenue. And two, we ramped up spending to fix reliability as soon as we could,
> which hurt costs. We'll see even higher spending in Q2 as our remediation plans
> ramp up further in that quarter. The costs are primarily around maintenance
> expense and CapEx for new antenna inventory.

AC ¶ 62; Polovoy Decl., Ex. C (Q1 2018 Earnings Call Tr.) at 4-5. Thorne disclosed on May 4,

2018, that although in summer 2017, 2Ku was Gogo's "most successful product launch ever with

greater than 98% service availability," when winter came, "we slipped on the 98% system

availability with our deicing problems" caused by de-icing fluid in "the antenna [raceways] in

which the antenna discs spin." AC ¶ 62; ; Polovoy Decl., Ex. C (Q1 2018 Earnings Call Tr.) at

5, 6. Although service availability had dropped to the mid-80s, Thorne explained that it

improved considerably "before the weather improved" and was back over 96% as of May 3,

2018 and would be back to 98% by year end. AC ¶ 62; Polovoy Decl., Ex. C (Q1 2018 Earnings

Call Tr.) at 5. Thorne further explained that Gogo had completed

> a thorough analysis of root causes and discovered that while deicing was the
> biggest issue, there are also some manufacturing issues and software issues at
> fault. We also discovered the deicing fluid entered the antenna [radome] through
> far more pathways than we originally thought. We fixed the software issues, and
> we fixed the manufacturing issues. We're in the process of replacing all
> contaminated antennas by the end of this quarter. Our goal was to hit 95%
> availability by June 30. And I want to repeat, this week, we're at 96%. So we're
> well ahead of plan. In the second half of this year, we're planning to roll out a set
> of 2Ku modifications that will keep deicing fluid out of the [raceways] and get it
> back to our target of 98% system availability.

AC ¶ 62; Polovoy Decl., Ex. C (Q1 2018 Earnings Call Tr.) at 6.  During that same earnings call,

Rowan stated that "[a]djusted EBITDA is expected to be below the previously provided range of

$75 million to $100 million due to increased cost and lost revenue related to the 2Ku

implementation challenges we cited.  Based on the timing of these expenses, we expect adjusted

EBITDA to be extremely low in the second quarter and to then ramp significantly in the second

half of the year similar to last year."  AC ¶ 63; Polovoy Decl., Ex. C (Q1 2018 Earnings Call Tr.)

at 10.

Gogo also announced on May 4, 2018 that it was "withdrawing its previously provided

2018 guidance for Adjusted EBITDA, airborne Cash CAPEX, and airborne equipment inventory

purchases related to airline-directed installations, as well as Free Cash Flow guidance."  AC

¶ 64; Polovoy Decl., Ex. E (Press Release, "Gogo Announces First Quarter 2018 Financial

Results," May 4, 2018 ("Q1 2018 Earnings Release")) at 2.  Gogo explained that "[t]he

Company is currently undergoing an integrated business planning process to evaluate ways to

further drive revenue growth, streamline business processes, prioritize operational initiatives and

improve its cost structure" and that it planned to provide updated guidance no later than its Q2

2018 earnings conference call.  Polovoy Decl., Ex. E (Q1 2018 Earnings Release) at 2.

### C.    Summary Of Plaintiffs' Claims

Plaintiffs allege that defendants intentionally and fraudulently made material

misstatements of fact (a) in the risk disclosure sections of Gogo's annual reports on SEC Forms

10-K for the years ended December 31, 2016 and 2017, filed on February 27, 2017 and February

22, 2018, respectively; (b) in Gogo's quarterly earnings conference calls by Small and Smagley

on February 27, 2017, Small and Wade on May 4, 2017, Small, Wade and Rowan on August 7,

2017, Small, Wade and Rowan on November 2, 2017, and Wade and Rowan on February 22,

2018; (c) at investor conferences and presentations by Small on June 14, 2017, Small, Wade and

Rowan on November 17, 2017, and Small and Rowan on December 6, 2017; and (d) in Gogo's earnings press release on February 22, 2018. AC ¶¶ 73-131. In essence, plaintiffs assert that these statements were false or misleading because they discussed 2Ku and expected revenue for 2018 without disclosing that Gogo was allegedly already having problems with the performance of its installed 2Ku systems due to what the Amended Complaint variously describes as a "design defect" or an "installation design defect." *Id.* ¶¶ 3, 10, 77, 81, 117, 131. The Amended Complaint, however, contains no factual allegations suggesting that any defendant was aware of the problems, much less the extent of the problems, at the time they made the statements at issue.

More specifically, plaintiffs contend that each of the statements was false and/or misleading at the time it was made because defendants did not disclose until February 22, 2018 that de-icing fluid was able to enter the compartment housing the 2Ku system on some aircraft (known as a radome) to the extent that it caused the system to malfunction. *Id.* Plaintiffs further contend that these disclosures on February 22, 2018 were only "partial[ly] corrective" because defendants did not fully disclose the extent of the 2Ku problems and their impact on expected costs and adjusted EBITDA until May 4, 2018. *Id.* ¶¶ 128, 131.

Plaintiffs allege that "Delta Air Lines was first to notify Gogo that the 2Ku systems were not working . . . as early as November or December 2017." AC ¶ 56. Plaintiffs do not attribute these "information and belief" allegations to any source, nor do they allege any facts to support their assertion that Gogo was informed by Delta of 2Ku problems beginning in "November or December 2017." Instead, plaintiffs contend that "everyone at the company, including the Chief Executive Officer" received "outage lists" that were generated by Gogo's "Service Now" database whenever a passenger reported a 2Ku system failure to the pilot and the pilot, in turn, reported it to Gogo by means of an Aircraft Communications Addressing and Reporting System

("ACARS") message (*id.* ¶ 58), but the Amended Complaint does not provide any source for this allegation, nor does it plead when, how often, or how those "outage lists" were received or what information they contained or conveyed to the alleged recipients. Critically, plaintiffs do not even purport to allege facts showing that any defendant had knowledge of problems with 2Ku reliability prior to an unclear date in "November or December 2017."[2]

Plaintiffs allege that when the "truth" about the 2Ku problems was fully disclosed on May 4, 2018, the per-share price of Gogo's stock dropped from $9.59 at the market close on May 3 to $7.86 at the market close on May 7, 2018, resulting in losses to Gogo's stockholders. *Id.* ¶¶ 142, 144. Plaintiffs claim that all defendants committed federal securities fraud under Section 10(b), and assert control person liability claims under Section 20(a) against the Individual Defendants. Plaintiffs' own allegations, however, show that reliability issues were not apparent until de-icing operations began in the winter of 2017, that the issues were timely disclosed and that appropriate cautionary language accompanied the Company's forward-looking statements. The allegations of the Amended Complaint are thus self-defeating and should be dismissed.

## ARGUMENT

## I.    PLAINTIFFS FAIL TO PLEAD SECURITIES FRAUD UNDER SECTION 10(b)

A securities fraud claim under Section 10(b) must be dismissed unless the plaintiff pleads facts establishing "(1) a material misrepresentation or omission by the defendant; (2) scienter [*i.e.*, fraudulent intent]; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008); *Pension Tr. Fund for Operating Eng'rs v. DeVry Educ. Grp., Inc.*, 2017 WL

---

[2]  Thus, as discussed below, the claims against Smagley are frivolous because he left Gogo on May 4, 2017 (AC ¶ 19), *i.e.*, long before "November or December 2017."

6039926, at *5 (N.D. Ill. Dec. 6, 2017) (Alonso, J.). Under the heightened pleading standards of the PSLRA and Rule 9(b), a securities fraud complaint must specify each alleged misstatement or omission, the reason or reasons it is false or misleading, and, if an allegation is made on information and belief, all facts on which that belief is formed. *DeVry*, 2017 WL 6039926, at *5-6 (citations omitted). The complaint must also state with particularity facts giving rise to a "strong inference" that the defendant acted with a fraudulent state of mind, and that strong inference of fraud must be "cogent and at least as compelling as any opposing inference." *Tellabs*, 551 U.S. at 314, 321 (citing 15 U.S.C. § 78u-4(b)(2)). The required state of mind (*i.e.*, scienter) is "an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756 (7th Cir. 2007). The Amended Complaint fails to meet any of these requirements.[3]

### A. Plaintiffs Fail To Plead That Any Statement Was False When Made

To survive a motion to dismiss, a plaintiff must allege facts to show with sufficient particularity that the defendants' statements were false when made, "not incorrect in retrospect." *Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, 2011 WL 1303387, at *20 (N.D. Ill. Mar. 31, 2011). "[T]he securities laws typically do not act as a Monday Morning Quarterback. The securities laws approach matters from an *ex ante* perspective." *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1332 (7th Cir. 1995) (internal citation and quotation omitted); *see also*

---

[3] A complaint also must be dismissed under Rule 12(b)(6) if it does not allege enough facts "to 'state a claim to relief that is plausible on its face.'" *DeVry*, 2017 WL 6039926, at *5 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires allegations of facts that "'[allow] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). Assumptions and conclusions "couched as [] factual allegation[s]" are not entitled to a presumption of truth on a motion to dismiss. *Twombly*, 550 U.S. at 555. In addition, where the allegations in a complaint are contradicted by documents made a part thereof, the document controls and the Court need not credit the allegations in the complaint. *See McCready*, 453 F.3d at 891.

*Higginbotham*, 495 F.3d at 759-60 ("there is no 'fraud by hindsight'"); *Zerger v. Midway Games, Inc.,* 2009 WL 3380653, at *7 (N.D. Ill. Oct. 19, 2009) (plaintiffs required to plead facts known to defendants "contemporaneous to the [allegedly false] statements").

Plaintiffs' sole alleged bases for contending that the challenged statements were false when made are Oakleigh Thorne's end-of-class-period statements that, when winter came, 2Ku service availability dropped to "the mid-80s" from "greater than 98%" in summer 2017 (AC ¶ 62) and the Amended Complaint's unsupported allegations that "Delta Air Lines was first to notify Gogo that the 2Ku systems were not working . . . as early as November or December 2017," and "everyone at the company, including the Chief Executive Officer" would receive "outage lists" generated every time a pilot reported a 2Ku outage on an aircraft.  AC ¶¶ 56, 58. For the reasons explained below, neither Thorne's statement nor plaintiffs' unsupported and unattributed allegations is sufficient to establish that any of the challenged statements was false when made.

1. Plaintiffs Fail To Plead Facts Showing That Defendants' Pre-November 2017 Statements Were False When Made

Plaintiffs have not even ***attempted*** to allege facts showing that any statement prior to November 2017 was false when made.  *First*, Mr. Thorne's May 4, 2018 statement, which plaintiffs allege finally disclosed the truth about the 2Ku defects, does not support any inference that the significant 2Ku problems discussed that day had materialized or become known to any defendant at the outset of the putative Class Period in February 2017 or at any time before "winter" 2017-18.  Thorne's statement supports the opposite inference.  Thorne, as Gogo's new CEO, explained:  "Last summer [summer 2017], 2Ku was our most successful product launch ever with greater than 98% service availability.  And then came ***winter*** and availability plunged down to the mid 80s."  AC ¶ 62 (emphasis added).  If availability was at 98% in summer 2017

10

and it "plunged down to the mid 80s" when winter came, Thorne's statement provides no basis to infer that Gogo was experiencing significant service availability issues prior to "winter."

*Second*, the allegation that "Delta Air Lines was ***first*** to notify Gogo that the 2Ku systems were not working" and that "[t]his occurred as early as November or December 2017" (AC ¶ 56 (emphasis added)) also negates any inference that Gogo was experiencing material problems with its 2Ku systems or that any defendant was aware of them prior to "November or December 2017." Thus, plaintiffs' own allegations—both the Thorne statement plaintiffs quote and the allegation about the first notification from Delta—show they have no claim based on statements made prior to November 2017. *See McCready*, 453 F.3d at 888 ("[I]f a plaintiff pleads facts which show he has no claim, then he has pled himself out of court.") (citation omitted); *Hussain v. Fed. Express Corp.*, 2013 WL 3337814, at *2 (N.D. Ill. July 2, 2013) (same). Accordingly, plaintiffs have failed to plead—much less plead with the particularity required by the PSLRA— any factual basis on which to infer that any of defendants' statements made prior to November 2017 was false at the time it was made. *See Zerger*, 2009 WL 3380653, at *7 (rejecting "chronological[ly] confus[ed]" allegation that decision made in October 2015 rendered August 2015 statement false when made). For that reason alone, the claims based on statements made in Gogo's 2016 10-K filed on February 27, 2017, Gogo's earning calls on February 27, May 4, and August 7, 2017, and the William Blair Growth Conference on June 14, 2017 (AC ¶¶ 74-96) amount to nothing more than non-cognizable "fraud by hindsight" and must be dismissed. (Because Smagley is not alleged to have made ***any*** statements after February 27, 2017, and the Amended Complaint provides no basis to infer that the February 27, 2017 statements attributed to him were false when made, Smagley should be dismissed from the case for this reason alone.)

11

2.      Plaintiffs Fail To Plead Facts Showing That Defendants' Statements In
November And December 2017 Were False When Made

The allegation that Delta Air Lines notified Gogo "as early as November or December 2017" of the problems with 2Ku reliability (AC ¶ 56) is similarly insufficient to allege falsity with the particularity required by Rule 9(b) and the PSLRA.  As noted above, pursuant to the PSLRA, if an allegation regarding an omission or misstatement is made on information and belief, "the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  "This 'particularity' requirement applies to allegations outside the plaintiff's personal knowledge, including allegations based upon counsel's interviews with confidential witnesses."  *Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*, 2012 WL 1030474, at *3 (N.D. Ill. Mar. 27, 2012).

Where a complaint relies on confidential witnesses, it can satisfy the PSLRA's particularity requirement without disclosing the identity of such witnesses, "but it must describe [its] sources with sufficient detail to support the probability that a person in the position occupied by the source would possess the information alleged, or in the alternative provide other evidence to support [its] allegations."  *Id*. (citation and internal quotation marks omitted).  The Seventh Circuit and this Court, however, have expressed significant skepticism about the reliability of information from anonymous sources.  *See Higginbotham*, 495 F.3d at 757; *DeVry*, 2017 WL 6039926, at *13 n.6; *see also DeVry*, 2012 WL 1030474, at *7 n.15 ("Both *Higginbotham* and *Tellabs II* addressed the scienter element of a Rule 10b–5 claim, rather than falsity, but we do not understand the Court's discussion of confidential witnesses to be limited to that element.").

Even though the Amended Complaint does not attribute the allegations in paragraphs 56-60 to the "former employees" with whom plaintiffs allegedly spoke (AC at 1), the allegations appear to be based on the type of information that, if true, would have been known only to

current or former employees of Gogo. Notwithstanding plaintiffs' failure to attribute these statements to confidential witnesses or, indeed, to any source at all, these allegations must be scrutinized for reliability in the same way as statements from confidential informants. *See DeVry*, 2012 WL 1030474, at *7 ("courts should evaluate confidential-witness allegations taking into account such factors as 'the level of detail provided by the confidential sources, the corroborative nature of the other facts alleged (including from other sources), the coherence and plausibility of the allegations, the number of sources, the reliability of the sources, and similar indicia'") (quoting *In re Cabletron Sys., Inc.*, 311 F.3d 11, 29-30 (1st Cir. 2002)); *see also Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 712 (7th Cir. 2008) ("*Tellabs III*"), ("The information that the confidential informants are reported to have obtained is set forth in convincing detail, with some of the information, moreover, corroborated by multiple sources."). Nothing in the Amended Complaint, however, provides any indicia of reliability. Indeed, the Court has no basis on which to determine whether these allegations are based on facts or mere rumor. *See, e.g., In re Career Educ. Corp.*, 2007 WL 1029092, at *4 (rejecting allegations based on rumors conveyed by confidential informants).

The Amended Complaint fails to meet the particularity requirement not only because it does not identify any source for its allegation that defendants were notified of problems with 2Ku "as early as November or December 2017" (AC ¶ 56), but also because it fails to provide any evidence to corroborate or otherwise support that allegation. While the allegation appears to be based on "interviews with former employees" of Gogo (AC at 1), the Amended Complaint is silent about how plaintiffs came to such "information and belief" and fails to provide any factual basis to support a reasonable belief that defendants were, in fact, made aware of then-existing issues with the 2Ku systems as early as "November or December 2017."

Furthermore, the allegation is impermissibly vague in that it does not include the required who, what, where, and when required to satisfy the particularity requirement of Rule 9(b) and the PSLRA. *See Arazie v. Mullane*, 2 F.3d 1456, 1467 (7th Cir. 1993) (plaintiffs failed to plead with particularity required by Rule 9(b) the "who, what, where, and when" of internal memorandum that allegedly contradicted defendants' statements); *Zerger*, 2009 WL 3380653, at *9 (plaintiffs "fail[ed] to plead the 'when' of Defendants' alleged fraud with enough particularity—or lack of outright confusion—to satisfy either the PSLRA or Fed. R. Civ. P. 9(b)"). The temporal imprecision of plaintiffs' allegation underscores its lack of particularity and reliability— apparently even plaintiffs do not believe they have a basis to allege without qualification that Delta's first reports of 2Ku problems were made in November 2017. Although the allegation is too imprecise to be credited at all under the PSLRA, at most, all the Court could infer from the imprecise allegation is that Gogo first received reports of 2Ku problems by the end of December 2017. Even if true, that still provides no basis to infer anything false in defendants' statements made weeks earlier on November 2, November 17 and December 6, 2017 (AC ¶¶ 98-119). The allegation that the reports of significant problems occurred in late December 2017 is entirely consistent with defendants' public statements made in November and December 2017. And, it would make perfect sense for the reports of significant issues to have been received in middle or late December, *i.e.*, *after* the November 2, November 17 and December 6 statements were made, because, as Gogo's new CEO Thorne explained in May 2018, the problems became apparent in *winter*, when issues with de-icing fluid used on aircraft fuselages entering the 2Ku radomes and causing significant problems arose (AC ¶ 62).

3.      Plaintiffs Fail To Plead Facts Showing That The February 22, 2018 Statements Were False When Made

On February 22, 2018, in its 10-K and in an earnings call, Gogo disclosed the information

14

then known and available to it about significant 2Ku de-icing problems that had begun to surface. Plaintiffs make conclusory assertions that these statements were only partially true, but offer no factual basis for saying so. Although plaintiffs fault defendants for not disclosing on February 22, 2018 everything that was later disclosed on May 4, 2018, nothing in the Amended Complaint suggests that defendants withheld any information about 2Ku problems and their impact on Gogo's future performance that was available and known to them as of February 22, 2018.

Plaintiffs' allegations about "outage lists" that were supposedly "received by everyone at the company, including the Chief Executive Officer" (AC ¶ 58) fail to support any contrary inference. First, the allegations about "outage lists" are unattributed and uncorroborated and under *Higginbotham* should not be considered. But even if they were attributed to a source shown to be reliable or corroborated by other allegations in the Amended Complaint, they still fail the PSLRA's and Rule 9(b)'s particularity requirement because the Amended Complaint is silent as to what these "outage lists" showed about overall 2Ku service reliability percentages at the time; indeed, the Amended Complaint contains no allegations specifying any contemporaneous information in these alleged reports that was inconsistent with the 2Ku performance statistics that defendants reported. *See In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 987 (E.D. Wis. 2009) (plaintiffs failed to plead that statements were false when made because "confidential witness allegations regarding the preparation and dissemination of daily reports do not actually mention any reports that contained statistics materially inconsistent with the defendants' public statements"). Moreover, these allegations give no indication that as of February 22, 2018, defendants understood that the 2Ku de-icing issue was worse than disclosed, or that it was caused by a design defect that would require more extensive and more

15

costly repairs, or how that would impact Gogo's adjusted EBITDA guidance for 2018.

Because plaintiffs have failed to plead with the requisite particularity specific facts supporting a plausible inference that each defendant knew on February 22, 2018 of the later-reported issues with the 2Ku system, plaintiffs' claims based on the February 22, 2018 statements should also be dismissed for failure to plead falsity.

### B. Defendants' Forward-Looking Statements Regarding Expected Cost Declines And Increased Adjusted EBITDA In 2018 Are Not Actionable Under The PSLRA Safe Harbor

Several of the challenged statements are not actionable for a separate and independent reason: they are protected by the PSLRA's statutory safe harbor for forward-looking statements. 15 U.S.C. § 78u-5(c). Specifically, these include:

- Smagley's February 27, 2017 statement that "[w]e expect a significant decline in cash needs in 2018 versus 2017 due to a substantial decline in Gogo's average investment for 2Ku installation and a significant increase in consolidated adjusted EBITDA" (AC ¶ 76);

- Rowan's statements on August 7, November 2 and 17, and December 6, 2017 concerning Gogo's expectations that Gogo's net costs for "airborne equipment and installations" would "come down in 2018 versus 2017" and adjusted EBITDA would be significantly higher in 2018 than 2017 (*id*. ¶¶ 94, 102, 110, 118); and

- Small's statement on February 22, 2018 that "we expect strong growth in consolidated revenue and EBITDA in 2018" (*id*. ¶ 126).

Pursuant to the PSLRA's safe harbor, a written or oral statement that is forward-looking is not actionable under the federal securities laws if either (a) it is identified as a forward-looking statement and is accompanied by meaningful cautionary language "identifying important factors that could cause actual results to differ materially from those in the forward-looking statement," or (b) plaintiffs fail to plead with particularity that the statement was made with actual knowledge that it was false or misleading. 15 U.S.C. § 78u-5(c)(1); *Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833, 843-48 (N.D. Ill. 2003) (internal quotation omitted). Both prongs of the safe

16

harbor are satisfied here and provide independent grounds for dismissal of the claims based on the forward-looking statements.

        1.     The Statements Of Expectation Were Identified As Forward-Looking And Were Accompanied By Meaningful Cautionary Language

The PSLRA defines "forward-looking statement" to include "a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share . . . or other financial items"; "a statement of future economic performance"; and "any statement of the assumptions underlying or relating to any [of the foregoing]." 15 U.S.C. § 78u-5(i)(1). Each of the above statements concerning Gogo's expected costs and adjusted EBITDA for 2018 falls within this statutory definition of "forward-looking statement."

Each of these statements also qualifies for the safe harbor because it was accompanied by remarks confirming that the speakers were making forward-looking statements and provided meaningful cautionary disclosures about the relevant risks that might jeopardize defendants' expectations about Gogo's future costs for 2Ku installations and adjusted EBITDA in 2018. Specifically, at each of the conference calls and/or presentations at which these statements were made, investors were warned that forward-looking statements regarding Gogo's future financial performance might be made and that they should consider the risk factors, identified in Gogo's earnings press releases, annual report on SEC Form 10-K and other SEC filings, that could cause actual results to differ materially from those in the forward-looking statements made on the conference call or during the presentation. *See* Polovoy Decl., Ex. F (Edited Transcript Q4 2016 Gogo Inc. Earnings Call, Feb. 27, 2017 ("Q4 2016 Earnings Call Tr.")) at 2; Polovoy Decl., Ex. G (Edited Transcript Q2 2017 Gogo Inc. Earnings Call, Aug. 7, 2017 ("Q2 2017 Earnings Call Tr.")) at 2; Polovoy Decl., Ex. H (Edited Transcript Q3 2017 Gogo Inc. Earnings Call, Nov. 2, 2017 ("Q3 2017 Earnings Call Tr.")) at 2; Polovoy Decl., Ex. I (Transcript Gogo Inc. Investor

and Analyst Day, Nov. 17, 2017 ("Nov. 17, 2017 Investor and Analyst Day Tr.")) at 1, 38;

Polovoy Decl., Ex. J (Gogo Inc. Investor and Analyst Day Presentation, Nov. 17, 2017) at 2;

Polovoy Decl., Ex. K (Edited Transcript Gogo Inc. at UBS Global Media and Communications

Conference, Dec. 6, 2017) at 15; Polovoy Decl., Ex. D (Q4 2017 Earnings Call Tr.) at 2.

Additionally, Gogo's earnings releases during this time period contained the following on-point

risk disclosures:

> When used in this discussion, the words . . . "expect," . . . "should," "will,"
> "future" and the negative of these or similar terms and phrases are intended to
> identify forward-looking statements in this press release. . . . Forward-looking
> statements reflect our current expectations regarding future events, results or
> outcomes.  These expectations may or may not be realized.  Although we believe
> the expectations reflected in the forward-looking statements are reasonable, we
> can give you no assurance these expectations will prove to have been correct.
> Some of these expectations may be based upon assumptions, data or judgments
> that prove to be incorrect.  Actual events, results and outcomes may differ
> materially from our expectations due to a variety of known and unknown risks,
> uncertainties and other factors.  Although it is not possible to identify all of these
> risks and factors, they include, among others, the following:  . . . any inability to
> timely and efficiently deploy our 2Ku service . . . ; the effects of service
> interruptions or delays, technology failures and equipment failures or
> malfunctions arising from defects or errors in our software or defects in or
> damage to our equipment; . . . ; increases in our projected capital expenditures due
> to, among other things, unexpected costs incurred in connection with the roll-out
> of our technology roadmap or our international expansion . . . .

*See, e.g.*, Polovoy Decl., Ex. L (Press Release, "Gogo Announces Fourth Quarter and Full-Year

2016 Financial Results," Feb. 27, 2017 ("Q4 2016 Earnings Release")) at 3-4; Polovoy Decl.,

Ex. M (Press Release, "Gogo Announces Fourth Quarter and Full-Year 2017 Financial Results,"

Feb. 22, 2018 ("Q4 2017 Earnings Release")) at 3-4.

     As plaintiffs acknowledge, Gogo's 2016 10-K included a risk factor titled "[w]e may be

unsuccessful or delayed in widely deploying and operating our 2Ku technology," which warned

that "there can be no assurance that we can meet our installation goals on our current timeline,

due to, among other things, the failure of any 2Ku-related technology and equipment to perform

as expected" and "[i]f 2Ku fails to perform as expected or its commercial availability is

significantly delayed as compared to the timelines for which we have contracted, our business,

business prospects and results of operations may be materially adversely affected."  AC ¶ 74

(quoting 2016 10-K at 25).  This risk factor was updated in Gogo's 2017 10-K, filed on February

22, 2018, as follows:

> We have encountered delays and quality problems as we deploy 2Ku, which we
> are in the process of remediating, and may continue to do so given the aggressive
> installation schedule that we are undertaking and the demands that the schedule
> places on employees, suppliers and other resources. . . . If 2Ku fails to perform as
> expected or we fail to meet the installation timelines and performance metrics for
> which we have contracted, our business, financial condition and results of
> operations may be materially adversely affected.

AC ¶ 130 (quoting 2017 10-K at 25-26).  Gogo's 2016 and 2017 10-Ks also warned in the

MD&A section that key factors that may affect Gogo's future performance include "costs

associated with the implementation of, and our ability to implement on a timely basis our

technology roadmap, upgrades and installation of our . . . 2Ku . . . technologies (including

failures or delays on the part of antenna and other equipment developers and providers) . . . ."

Polovoy Decl. Ex. B (2016 10-K) at 59; Polovoy Decl. Ex. A (2017 10-K) at 56.

  In determining whether the safe harbor applies here, the Court may consider cautionary

statements that accompanied the statements at issue, cautionary statements that were

incorporated by reference, and cautionary statements that were publicly available at the time

each of the forward-looking statements was made.  *See Asher v. Baxter Int'l Inc.*, 377 F.3d 727,

732 (7th Cir. 2004); *In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1166-67 (N.D.

Ill. 2004); *Stavros*, 266 F. Supp. 2d at 844.  The Seventh Circuit has explained that the

cautionary statements "need not identify what actually goes wrong and causes the projections to

be inaccurate; prevision is not required . . . . [I]t is enough to point to the principal contingencies

that could cause actual results to depart from the projection."  *Asher*, 377 F.3d at 732, 734.

Gogo's warnings about potential and actual 2Ku performance failures meet this requirement. Accordingly, defendants' forward-looking statements are protected by the PSLRA's safe harbor, and plaintiffs' claims based on those statements should be dismissed.

> 2. Plaintiffs Fail To Plead That Defendants Actually Knew Their Statements Were False Or Misleading

The forward-looking statements are not actionable under the safe harbor for the additional and alternate reason that plaintiffs have not pleaded with particularity facts to support a strong inference that defendants actually knew that their forward-looking statements about expected costs and adjusted EBITDA in 2018 were false or misleading when they made them. *See Stavros*, 266 F. Supp. 2d at 847; 15 U.S.C. § 78u-5(c)(1)(B); 15 U.S.C. § 78u-4(b)(2); *see also In re Harley-Davidson*, 660 F. Supp. 2d at 994 ("a forward-looking statement unaccompanied by meaningful cautionary language may still qualify for safe harbor if the plaintiff cannot prove the defendants had 'actual knowledge . . . that the statement was false or misleading.'"). Thus, even if the Court were to assume that the risks related to 2Ku had already materialized at the time the forward-looking statements were made, and the cautionary statements therefore were not "meaningful," the challenged forward-looking statements are still protected by the safe harbor. The reason is that, as explained in Section I.C.1 below, plaintiffs have not adequately alleged that defendants made their forward-looking statements with actual knowledge that they were false or misleading, *i.e.*, they were *actually aware* of the eventual scope of the problems and their impact on future costs and adjusted EBITDA at the time they made those statements. *See* 15 U.S.C. § 78u-5(c)(1)(B); *Stavros*, 266 F. Supp. 2d at 847.

**C. Plaintiffs Fail To Plead That Any Defendant Acted With The Intent To Defraud**

Nothing in the Amended Complaint shows that any defendant acted with any fraudulent intent. Defendants provided the best information that was available at the time each of the

challenged statements was made, and the Amended Complaint offers no reason to believe otherwise. That alone is fatal to plaintiffs' case.

Because, as shown above, plaintiffs failed to adequately plead that any of defendants' statements was false or misleading, they can hardly plead that defendants made false statements with the required state of mind. *See Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, 2012 WL 1068761, at \*11 (N.D. Ill. Mar. 29, 2012). Nonetheless, even if the Court were to assume that any of the statements was false when made, plaintiffs' claims still fail because their "scienter" allegations (AC ¶¶ 132-139) fail to give rise to a "strong inference" of fraudulent intent that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324; *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008) (quoting *Tellabs*). The Seventh Circuit has rejected the "group pleading doctrine," and therefore "the plaintiffs must create a strong inference of scienter with respect to each individual defendant." *Pugh*, 521 F.3d at 693. A separate scienter inquiry must be undertaken for each defendant and each statement. *Id*.

1.  Plaintiffs Have Not Pleaded That Any Of Defendants Knew Or Recklessly Disregarded Any Design Problems With Gogo's 2Ku Systems

The sole alleged false statement attributed to Smagley is his statement during an earnings conference call on February 27, 2017—nine months before winter 2017-18—about an expected decline in cash needs and an increase in EBITDA in 2018 compared to 2017. AC ¶ 76. Because, as shown above, this is a forward-looking statement protected by the PSLRA's safe harbor, the required scienter is actual knowledge—anything less requires dismissal. *See Tellabs III*, 513 F.3d at 705 ("A complication introduced by the Private Securities Litigation Reform Act is that 'actual knowledge' of falsity, not merely indifference to the danger that a statement is false, is required for liability for 'forward-looking' statements—predictions or speculations about the

future."); 15 U.S.C. § 78u-5(c)(1)(B)(ii).

Although the "scienter" section of the Amended Complaint contains no allegations about Smagley, plaintiffs allege that because "winter [*2016-17*] was coming to a close at the time . . . , Smagley knew about the [sic] 2Ku's design defect and that the costs associated with fixing it would increase exponentially the following year as additional 2Ku systems were installed and came online." AC ¶ 77. This is nothing but a bare allegation. Plaintiffs have not alleged a single fact—much less the specific facts required by the PSLRA—to support even a weak inference that Smagley knew in February 27, *2017* that the 2Ku systems suffered from a design defect or that the costs of fixing it would increase in 2018. Plaintiffs' allegations support the opposite inference because, as discussed above, the Amended Complaint alleges that the problems with the 2Ku system were first reported to Gogo only in November or December 2017. *Id.* ¶ 56. Even if the Court were to credit those unsupported allegations, they only underscore how weak the allegations against Smagley are. The inference that Smagley had actual knowledge in February 2017 that Gogo would be unable to meet its 2018 expectations because of problems that plaintiffs contend were first reported months later is neither cogent nor compelling; it is preposterous.

Similarly preposterous are plaintiffs' contentions that any of the other defendants actually knew or recklessly disregarded information that materially contradicted any of their public statements—both present and forward-looking. Plaintiffs allege that defendants Small, Wade and Rowan "knew or had access to information that materially contradicted their public statements" (AC ¶ 132) because they allegedly received "'outage reports' whenever a 2Ku system failed" (*id.* ¶ 134) and confirmed in public statements they each made on November 17, 2017 that they "monitored the performance of 2Ku systems in real-time" (*id.* ¶ 136; *see also id.*

¶¶ 135, 137).[4] As shown above, plaintiffs do not plead any facts indicating that any problems with 2Ku and de-icing were reported prior to November 2017 at the earliest. *Id*. ¶¶ 56, 58. Consequently, the Amended Complaint pleads no basis on which to infer that any defendant knew or even recklessly disregarded any information that materially contradicted any of their pre-November 2017 statements. Accordingly, the claims based on statements made in Gogo's 2016 10-K and earning calls on February 27, May 4, and August 7, 2017, and at the William Blair Growth Conference on June 14, 2017 must be dismissed for the additional reason that plaintiffs failed to plead any inference—weak, strong, cogent, compelling or otherwise—that defendants had any fraudulent intent in making those statements.

Plaintiffs also fail to meet the heightened standard for pleading a strong inference of scienter as to any of the statements made by any defendant on November 2, November 17 and December 6, 2017. *First*, for the reasons discussed above, plaintiffs have not pleaded any facts supporting even a weak inference that the de-icing problems with 2Ku were reported before the end of December. *Second*, the unsupported and unattributed allegations that defendants received "outage reports" do not suffice because the Amended Complaint fails to plead any facts establishing the reliability of that allegation, the specific nature of the information that was contained in those reports, or precisely how such information contradicted any of the challenged statements. As the Seventh Circuit has explained, information from anonymous sources (in this case, completely unidentified sources) must be discounted in the scienter inquiry because "[i]t is hard to see how information from anonymous sources could be deemed 'compelling' or how [the court] could take account of plausible opposing inferences." *Higginbotham*, 495 F.3d at 757.

---

[4] Contrary to plaintiffs' insinuation, Small did not state on November 17, 2017 that he "studied [the performance requirements] on a routine basis" (AC ¶ 135). *See* Polovoy Decl., Ex. I (Nov. 17, 2017 Investor and Analyst Day Tr.).

*Third*, even if the Court were to credit those allegations as trustworthy and reliable, the mere receipt of reports that supposedly contradict defendants' class-period statements is not enough to support a strong inference that defendants acted with the requisite scienter—especially where, as here, the content of the alleged reports and timing of their alleged receipt by defendants is so vague, and plaintiffs fail to plead any corroborating facts supporting an inference of scienter. *See In re Harley-Davidson*, 660 F. Supp. 2d at 999 ("not only is mere receipt of reports insufficient to establish scienter, the inferential leap required to tie these alleged facts to the conclusion that defendants acted knowingly or recklessly when presenting relevant information to the market is untenable given the heightened pleading standards").

Plaintiffs likewise fail to plead facts supporting a strong inference of scienter as to defendants' statements on February 22, 2018. Defendants disclosed the problems that began to be reported as the winter weather hit in December 2017, and nothing in the Amended Complaint indicates that defendants disclosed anything less than the best information that was available to them at that time. If the first reports of significant problems were received in late December, it is not at all surprising that, barely two months later, the full extent of the problem, all of its root causes, and its impact on the Company's future performance were not yet apparent. As Gogo's new CEO said on May 4, 2018, the Company had completed "a thorough analysis of root causes and discovered that while deicing"—which was disclosed on February 22, 2018—"was the biggest issue, there are also some manufacturing issues and software issues at fault" and "also discovered the deicing fluid entered the antenna [radome] through far more pathways than we originally thought." Polovoy Decl., Ex. C (Q1 2018 Earnings Call Tr.) at 6. The fact that the Company continued to investigate, address and assess the problem even after the February 22, 2018 disclosures were made does not support the inference that they fraudulently concealed any

24

known information on February 22, 2018.  As the Seventh Circuit has explained, "[t]aking the time necessary to get things right is both proper and lawful.  Managers cannot tell lies but are entitled to investigate for a reasonable time, until they have a full story to reveal." *Higginbotham*, 495 F.3d at 761.

Plaintiffs cannot rely on snippets taken out of context from certain analyst reports as if they were evidence that the public felt misled.  *See* AC ¶¶ 9, 70, 71, 139; *see also In re Eros Int'l Sec. Litig.*, 2017 WL 6405846, at *6, *8 (S.D.N.Y. Sept. 22, 2017) (plaintiffs' citations to "cherry-picked statements" from analyst reports did not support a plausible inference "that the investment community was misled by Defendants' statements"), *aff'd sub nom. Eisner v. Eros Int'l PLC*, 735 F. App'x 15 (2d Cir. 2018).  Nothing in any of the analyst reports cited in the Amended Complaint provides a factual basis to suggest that defendants knew about significant 2Ku problems any sooner than the information was disclosed.  When read in context, the May 8, 2018 report of Cowen analyst Lance Vitanza, quoted in paragraphs 9 and 71 of the Amended Complaint, simply reports exactly what CEO Thorne explained, *i.e.*, that after further investigation, the problems reported in February 2018 turned out to be "much worse than initially thought."  Polovoy Decl. Ex. N (Lance Vitanza, "Operational Setbacks Leave Gogo Complex in Limbo for Now," Earnings Update, May 8, 2018) at 1.  Similarly, despite Northland Capital Markets analyst Paul Penney's insinuations about Small's credibility (*see* AC ¶¶ 9, 70), his reports say nothing to back up those insinuations—they do not identify any factual information that was known earlier but not disclosed until May 4, 2018.  *See* Polovoy Decl., Ex. O (Paul Penney, "Gogo Inc. (GOGO) Your Seat Cushion Can Also Be Used as a Flotation Device – PT to $3.50," May 7, 2018); *see also* Polovoy Dec., Ex. P (Paul Penney, "Gogo Inc. (GOGO) Seat Belts Get an Extra Tug with Risk Clouds Emerging Darker & Closer," February

23, 2018). And finally, contrary to plaintiffs' portrayal of a February 23, 2018 J.P. Morgan analyst report as having "overlooked" defendants' February 22, 2018 disclosures "almost entirely," that report noted the Company's reduced "2Ku install guidance" and downgraded Gogo from overweight to neutral and lowered its price target from $17 to $10. Polovoy Decl., Ex. Q (Phillip Cusick, Sebastiano Petti, Richard Choe, "Gogo Weaker than Expected 2018 Guidance; Downgrade to Neutral and Lower Price Target to $10," Feb. 23, 2018) at 1, 3.[5]

In short, nothing in plaintiffs' Amended Complaint or the analyst reports they quote provides any basis to infer that any defendant withheld known material information from the public at the time they made their public statements about 2Ku or acted with an intent to defraud.

2. Plaintiffs Have Not Alleged Any Stock Sales Or Any Other Motive To Commit Fraud

Plaintiffs' allegations of scienter are undermined by their failure to plead any stock sales by any defendant during the putative Class Period, or any other motive to commit fraud, and by the fact that Gogo's CEO **purchased** a significant amount of stock during the putative Class Period (when plaintiffs allege he knew the stock price was artificially inflated). While the absence of motive allegations is not dispositive, the Supreme Court has acknowledged that "motive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter inference." *Tellabs*, 551 U.S. at 325. The absence of any alleged financial incentive to commit fraud, as well as stock purchases during the alleged class period, can negate an inference of scienter. *See, e.g., Searls v. Glasser*, 64 F.3d 1061, 1068 (7th Cir. 1995)

---

[5] Plaintiffs' assertion that J.P. Morgan stated that Gogo's "transition to 2Ku remains on course" (AC ¶ 127) is also not quite accurate. In full context, the statement reads as follows: "While the CA-NA transition to 2Ku remains on course, the segment will face headwinds in 2018 related to American Airlines de-installs (to Viasat) – which should lead to an estimated 360 aircraft reduction y/y (~400 de-installs and some expansion of existing fleet) – as well as lower ARPA due to mix shift (more regional jets on a % basis)." Polovoy Decl., Ex. Q at 1.

(defendants' acquisitions of company stock during alleged class period undermined inference of scienter); *In re Biogen Inc. Sec. Litig.*, 193 F. Supp. 3d 5, 50 (D. Mass. 2016) (same); *Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 246 (1st Cir. 2015) ("[Defendant] *increased* his holdings of Abiomed stock by 9.2% during the Class Period, which negates any inference that he had a motive to artificially inflate Abiomed's stock during that period.") (emphasis in original); *DeVry*, 2012 WL 1030474, at *12 (finding "dubious" plaintiffs' contention that individual defendant's stock purchases do not undercut inference of scienter with respect to defendant who made no stock sales and only increased his stock holdings during the alleged class period); *IBEW Local 697 Pension Fund v. Ltd. Brands, Inc.*, 788 F. Supp. 2d 609, 631 (S.D. Ohio 2011) (defendants' purchases during the class period "undermine any inference of scienter"); *Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 673 F. Supp. 2d 718, 749 (S.D. Ind. 2009) (stock repurchase program negates any inference of scienter) (citing cases); *In re Century Bus. Servs. Sec. Litig.*, 2002 WL 32254513, at *8 (N.D. Ohio 2002) (defendant's purchases during class period "inconsistent with a finding of . . . scienter").

Here, plaintiffs have not alleged any stock sales or any other motive for any defendant to commit fraud. Moreover, Small—the Company's CEO at the time each of the allegedly fraudulent statements was made—significantly increased his Gogo stock holding during the putative Class Period, when he purchased 100,000 shares of Gogo common stock at $8.79 per share on November 6, 2017, bringing his total Gogo stock holding to 398,224. *See* Polovoy Decl., Ex. R (SEC Form 4, Nov. 8, 2017). In light of plaintiffs' allegations that the problems with 2Ku increased in November 2017 (AC ¶ 58), the timing of Small's significant stock acquisition undermines plaintiffs' allegations that Small knew of significant undisclosed

problems with 2Ku that were inconsistent with his public statements and were artificially inflating Gogo's stock price. Small's stock purchases eviscerate any inference that defendants acted with scienter: If Small thought for a moment that winter 2017-18 would bring significant problems with 2Ku, he obviously would not have purchased Gogo stock a few weeks before winter started, much less increase his holdings by more than 33 percent.

In sum, the allegations of the Amended Complaint fail to support a strong inference of scienter that is cogent and at least as compelling as the nonfraudulent inference.[6]

## II.  PLAINTIFFS FAIL TO PLEAD CONTROL PERSON LIABILITY UNDER SECTION 20(a)

To state a claim under Section 20(a), a plaintiff must first plead a primary violation of the securities laws. *Pugh*, 521 F.3d at 693. Because plaintiffs have failed to do so, their Section 20(a) claim must be dismissed. *Id.* Furthermore, Smagley was no longer Gogo's CFO for most of the putative Class Period (AC ¶ 19), and accordingly cannot be held liable as a control person under Section 20(a) for any statements made during the period when he was no longer Gogo's CFO (that is, any statements after May 4, 2017).

---

[6]  Because the Amended Complaint does not plead scienter as against any of the Individual Defendants, it also fails to plead scienter against Gogo. *See Zimmer*, 673 F. Supp. 2d at 747 n.28 (in determining corporate scienter, a court must look to the scienter of individual corporate officers) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 366 (5th Cir. 2004)).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Amended Complaint with prejudice.

Dated: February 8, 2019

Respectfully submitted,

NEAL, GERBER & EISENBERG LLP

/s/ *Andrew G. May*
Jonathan S. Quinn
Andrew G. May
Two North LaSalle Street, Suite 1700
Chicago, Illinois 60602
Telephone: (312) 269-8000
jquinn@nge.com
amay@nge.com

-and-

SHEARMAN & STERLING LLP
Jerome S. Fortinsky (admitted *pro hac vice*)
Brian H. Polovoy (admitted *pro hac vice*)
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
jfortinsky@shearman.com
bpolovoy@shearman.com

*Attorneys for Defendants Gogo Inc.,*
*Michael J. Small, Norman Smagley,*
*Barry Rowan and John Wade*

NYDOCS04/624905