**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ASHLEY PIERRELOUIS, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>GOGO INC., MICHAEL J. SMALL, NORMAN SMAGLEY, BARRY ROWAN, and JOHN WADE,<br><br>    Defendants. | Case No. 18-cv-04473<br><br>Hon. Jorge L. Alonso |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

Jonathan S. Quinn
Andrew G. May
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Chicago, IL 60602
(312) 269-8000
jquinn@nge.com
amay@nge.com

Jerome S. Fortinsky (admitted *pro hac vice*)
Brian H. Polovoy (admitted *pro hac vice*)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000
jfortinsky@shearman.com
bpolovoy@shearman.com

*Attorneys for Defendants Gogo Inc.,*
*Michael J. Small, Norman Smagley,*
*Barry Rowan and John Wade*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT .............................................................................................................. 2

I. PLAINTIFFS FAIL TO PLEAD THAT ANY STATEMENT WAS
FALSE WHEN MADE ............................................................................. 2

    A. Plaintiffs Fail To Plead Facts Showing That Defendants'
Pre-November 2017 Statements Were False When Made ..................... 2

    B. Plaintiffs Fail To Plead Facts Showing That Defendants'
Statements In November And December 2017 Were False When
Made .................................................................................................... 5

    C. Plaintiffs Fail To Plead Facts Showing That Defendants' February
22, 2018 Statements Were False When Made ..................................... 8

II. DEFENDANTS' FORWARD-LOOKING STATEMENTS ARE NOT
ACTIONABLE UNDER THE PSLRA SAFE HARBOR ................................... 9

III. PLAINTIFFS FAIL TO PLEAD THAT ANY DEFENDANT ACTED
WITH THE INTENT TO DEFRAUD .............................................................11

CONCLUSION..........................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Asher v. Baxter Int'l Inc.*, 377 F.3d 727 (7th Cir. 2004) ............................................... 10

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984) ...................... 2, 5

*Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827 (N.D. Ill. 2000) ...................................... 9

*City of Livonia Emps.' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*,
711 F.3d 754 (7th Cir. 2013) .................................................................. 7, 11, 15

*Cornielson v. Infinium Capital Mgm't, LLC*, 916 F.3d 589 (7th Cir. 2019) ............... 14

*Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*,
2012 WL 1068761 (N.D. Ill. Mar. 29, 2012) ........................................................ 8

*Hussain v. Fed. Express Corp.*, 2013 WL 3337814 (N.D. Ill. July 2, 2013) ................ 4

*Johnson v. Tellabs, Inc.*, 262 F. Supp. 2d 937 (N.D. Ill. 2003) ........................... 10, 11

*Kennedy v. Venrock Assocs.*, 348 F.3d 584 (7th Cir. 2003) ..................................... 2, 5

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702 (7th Cir. 2008) ............... 14

*McCready v. eBay, Inc.*, 453 F.3d 882 (7th Cir. 2006) .............................................. 4

*In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152 (N.D. Ill. 2004) ........... 11

*Pension Tr. Fund for Operating Eng'rs v. DeVry Educ. Grp., Inc.*,
2017 WL 6039926 (N.D. Ill. Dec. 6, 2017) ...................................................... 3, 8

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
895 F.3d 933 (7th Cir. 2018) ............................................................................. 15

*Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
679 F.3d 952 (7th Cir. 2012) ............................................................................. 15

*Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008) .................................................. 13

*Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833 (N.D. Ill. 2003) ................................. 11

*In re Supreme Indus., Inc. Sec. Litig.*,
2019 WL 1436022 (N.D. Ind. Mar. 29, 2019) ..................................................... 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ....................... 13, 14

*Zerger v. Midway Games, Inc.*, 2009 WL 3380653 (N.D. Ill. Oct. 19, 2009) .............................7

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) .....................................14

**Statutes**

15 U.S.C. § 78u-4 ...........................................................................................................................3

15 U.S.C. § 78u-5 ............................................................................................................... 9, 10, 11

**Other Sources**

Jonathan M. Gitlin, *An end to in-flight Wi-Fi misery is at hand with Gogo's 2Ku*,
    Ars Technica (Jan. 22, 2018), https://arstechnica.com/cars/2018/01/an-end-to-
    in-flight-wi-fi-misery-is-at-hand-with-gogos-2ku/ ...........................................................2, 6

Jason Rabinowitz, *Delta deepens involvement in 2Ku MRO in face of reliability
    issues*, Runway Girl Network (Feb. 27, 2018),
    https://runwaygirlnetwork.com/2018/02/27/ delta-deepens-involvement-in-
    2ku-mro-in-face-of-wi-fi-reliability-issues/ .....................................................................2, 6

Anne Sraders, *What Is the Product Life Cycle? Stages and Examples*, TheStreet
    (Mar. 4, 2019), https://www.thestreet.com/markets/commodities/product-life-
    cycle-14882534 ..................................................................................................................12

## PRELIMINARY STATEMENT[1]

In their Amended Complaint, plaintiffs admit that the alleged misstatements made from February 27, 2017 through December 6, 2017—in other words, all of the alleged misstatements except the statements made on February 22, 2018—were made before Gogo received the first complaints that its 2Ku system was not working. As for the February 22, 2018 statements, plaintiffs' only gripe is that defendants did not disclose as much as they later disclosed about the 2Ku problems at the end of the alleged class period on May 4, 2018. But plaintiffs plead no contemporaneous facts suggesting that defendants knew on February 22, 2018 that the problem was as bad as disclosed later on May 4, 2018. The Court should therefore dismiss the case.

Plaintiffs attempt to avoid dismissal by relying on two internet articles from January 22 and February 27, 2018, which plaintiffs claim corroborate the allegations of their Amended Complaint. Putting aside whether plaintiffs can properly supplement the allegations of their pleading in this way—and they cannot—the articles do nothing to save plaintiffs' claims. The January 22, 2018 article reports on the author's experience testing 2Ku on Delta flights from Washington, DC to Detroit and back on December 11, 2017, with problem-free connectivity on the outbound flight but a system outage caused by de-icing fluid penetrating to the antenna on the return flight. The February 27, 2018 article discusses an *internal* Delta memorandum reporting on 2Ku outages "in recent months" but without any specific dates. Neither of these articles provides what is missing from the Amended Complaint, and what the federal securities laws require: specific facts showing that Gogo received the first reports of significant 2Ku outages before December 6, 2017 (the date of the last alleged misstatement before Gogo first disclosed the 2Ku problems on February 22, 2018). In fact, the January article states that it

---

[1] Capitalized terms have the meanings set forth in defendants' opening brief (Dkt. No. 64).

describes an outage that took place five days after the December 6 statement, on December 11, 2017. The articles also fail to establish that on February 22, 2018, defendants knew the problems were worse than disclosed that day. The Court should accordingly dismiss plaintiffs' claims.

## ARGUMENT

## I.    PLAINTIFFS FAIL TO PLEAD THAT ANY STATEMENT WAS FALSE WHEN MADE

Conceding that their Amended Complaint fails to meet the particularity requirements of the PSLRA and Rule 9(b), plaintiffs attempt to bolster their flimsy allegations with reference to two internet articles—one dated January 22, 2018 and another dated February 27, 2018.[2] Neither article is referred to in the complaint, and therefore neither is properly before the Court on this motion. *See Kennedy v. Venrock Assocs.*, 348 F.3d 584, 592-93 (7th Cir. 2003) (plaintiffs cannot "defend against dismissal [of fraud claims] by alleging in their brief facts consistent with but not contained in the complaint . . . because a charge of fraud must be *pleaded* with particularity"). "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).

Even if the Court were to consider these articles in deciding this motion, they say nothing about 2Ku problems before December 11, 2017. The articles fail to show that defendants' challenged statements were false when made.

### A.    Plaintiffs Fail To Plead Facts Showing That Defendants' Pre-November 2017 Statements Were False When Made

As shown in our opening brief, the allegations of the Amended Complaint undermine plaintiffs' claim that defendants' statements in February, May, June and August 2017 were false

---

[2] *See* Jonathan M. Gitlin, *An end to in-flight Wi-Fi misery is at hand with Gogo's 2Ku*, Ars Technica (Jan. 22, 2018), https://arstechnica.com/cars/2018/01/an-end-to-in-flight-wi-fi-misery-is-at-hand-with-gogos-2ku/; Jason Rabinowitz, *Delta deepens involvement in 2Ku MRO in face of reliability issues*, Runway Girl Network (Feb. 27, 2018), https://runwaygirlnetwork.com/2018/02/27/delta-deepens-involvement-in-2ku-mro-in-face-of-wi-fi-reliability-issues/.

when made (AC ¶¶ 73-97).  Rather than acknowledge their express allegation that "Delta Air Lines *was first* to notify Gogo that the 2Ku systems were not working" and "[t]his occurred *as early as November or December 2017*" (*id.* ¶ 56) (emphasis added), plaintiffs attempt to evade their pleading by conjecturing that "Defendants were *undoubtedly* aware of 2Ku system degradation earlier than November 2017."  Opp. at 14 (emphasis added).  The Opposition asks the Court to credit this speculative conjecture because (1) "at least 94-130 aircraft had operated in a previous winter" without the de-icing modification discussed in a January 9, 2019 press release and therefore must have experienced de-icing problems,[3] and (2) when defendants warned in August 2017 of a dilution to average-revenue-per-aircraft ("ARPA") "beginning in the back half of 2017 by the new aircraft coming online," they really meant that newly installed 2Ku systems "were bringing down ARPA" because they did not have the "radome fixes" that were already installed on seasoned planes.  Opp. at 14-15.  Each of these inferences is both unsupported and inconsistent with the Amended Complaint's allegations.

First, the Complaint contains no basis on which to infer that defendants were aware of 2Ku outages in the previous winter (2016-17) or, even if they knew about outages, that they knew as early as winter 2016-17 that the outages were caused by de-icing or a design defect and were not just one-off occurrences.  The allegation that Delta "was first to notify Gogo that the 2Ku systems were not working" and did so "as early as November or December 2017" (AC ¶ 56) shows just the opposite—*i.e.*, that defendants were not aware that 2Ku had a problem with a

---

[3] Contrary to plaintiffs' assertion that "Defendants' suggestion to the contrary is illogical" (Opp. at 14), defendants have not suggested the contrary and need not do so to prevail on this motion.  Rather, to survive a motion to dismiss, plaintiffs must plead sufficient facts to show why defendants' challenged statements were false when made.  *See Pension Tr. Fund for Operating Eng'rs v. DeVry Educ. Grp., Inc.*, 2017 WL 6039926, at *6 (N.D. Ill. Dec. 6, 2017) (quoting 15 U.S.C. § 78u-4).  All defendants need show is that plaintiffs have not pleaded specific facts—as opposed to speculation or inferences—demonstrating that defendants' statements were false when made.

recurring cause until Delta raised the issue nearly a year later in "November or December 2017." Such self-defeating allegations require dismissal of the complaint. *See McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) ("[I]f a plaintiff pleads facts which show he has no claim, then he has pled himself out of court.") (citation omitted); *Hussain v. Fed. Express Corp.*, 2013 WL 3337814, at *2 (N.D. Ill. July 2, 2013) (same).

Second, the Amended Complaint alleges no facts to support the inference that in August 2017 "seasoned planes that had the radome fix had increased ARPA, but newly installed 2Kus without radome fixes were bringing down ARPA" (Opp. at 15). As defendants told investors repeatedly, when the service is first installed on new aircraft, those aircraft are expected to generate lower revenue because it takes time to acquaint customers with the new service. *See, e.g.*, Polovoy Decl., Ex. F (Q4 2016 Earnings Call Tr.) at 11 ("it just takes a while when you are launching a new fleet to get the revenue growing. . . . ARPA growth . . . starts at a low number when you launch a new fleet"); *id.*, Ex. K (Edited Transcript Gogo Inc. at UBS Global Media and Communications Conference, Dec. 6, 2017) at 4 ("when you bring on a new airline[ ], they – before you get to full fleet or nearly full fleet deployment, you tend to see lower ARPA and it takes a couple of years for those aircraft to season"). Furthermore, plaintiffs' argument is contrary to their complaint, which alleges that Gogo "first attempted to resolve the problem by changing the antennas and installing a part known as a 'deflector'" in response to Delta's complaints in November or December 2017, but the "deflectors did not fix the problem" (AC ¶ 57). The increased ARPA from seasoned planes in August 2017 could not have resulted from a radome fix because plaintiffs claim that the initial fix was unsuccessful (*id.*) and that the later successful fix was not introduced until December 2018 (Opp. at 12 n.13). The plaintiffs cannot have it both ways. If the fix that prevented system degradation was only introduced in December

4

2018, it could not have been the reason for the difference in ARPA anticipated by defendants in August 2017.  Moreover, the inference plaintiffs urge requires the Court to presume that defendants were not rational business people.  If defendants knew that new aircraft were being installed with defective antennas and radomes and this was diluting ARPA, but they had fixes installed on seasoned planes already, surely they would have made the same fixes on the newly installed planes and thereby avoided any dilution to ARPA.

Finally, plaintiffs offer no answer to our observation (Opening Br. at 10-11) that the May 4, 2018 statement by Gogo CEO Oakleigh Thorne (whom plaintiffs portray as a truth-teller (Opp. at 6-7)) undermines plaintiffs' inference that defendants knew about the 2Ku problems in February 2017 or any time before "winter" 2017-18, when system availability "plunged down to the mid 80s."  AC ¶ 62.  Thorne's statement that summer 2017 "was our most successful product launch ever with greater than 98% service availability" (*id.*) directly contradicts plaintiffs' assertions that defendants' statements in February, May, June and August 2017 were false. Plaintiffs thus have no factual basis to support their claims based on those statements.

### B.    Plaintiffs Fail To Plead Facts Showing That Defendants' Statements In November And December 2017 Were False When Made

 Instead of acknowledging or addressing their Amended Complaint's fatal failure to identify when in "November or December 2017" Delta notified Gogo that 2Ku systems were not working, plaintiffs attempt to bolster those vague allegations with what they claim is corroborating information from the two internet articles introduced in their opposition brief (Opp. at 12 & n. 12).  As discussed above, plaintiffs cannot supplement their deficient pleading in this way.  *See Kennedy*, 348 F.3d at 592-93; *Car Carriers*, 745 F.2d at 1107.  But even if they could, neither article says that Delta reported 2Ku problems to Gogo before defendants' challenged statements on November 2, November 17 and December 6, 2017.  In fact, the Ars

Technica article reports about a single outage on the return flight of the author's round-trip travel on Delta from Washington, DC to Detroit on December 11, 2017—several days *after* the last of those statements was made.[4]  Nothing in that article suggests that Delta notified Gogo of recurring problems caused by de-icing at the time of that flight or indeed at any time before or after.  The February 27, 2018 Runway Girl article quotes a February 24, 2018 internal memo supposedly prepared by a Delta cabin maintenance employee and circulated to Delta flight attendants discussing problems experienced with 2Ku on "some" Delta flights "in recent months."[5]  Like the Ars Technica article, the Runway Girl article contains nothing to suggest that these problems were reported to Gogo before December 6, 2017.[6]

Plaintiffs also continue to mistakenly rely on Thorne's May 4, 2018 statement as support for their assertion that defendants' November 2, 2017 and December 6, 2017 statements were false when made.  Opp. at 9-10.  But, as shown in our opening brief and above, all Thorne said was that when winter came, "availability plunged to the mid 80s."[7]  AC ¶ 62; Opening Br. at 10-11.  Thorne's statement thus provides no basis to infer that the 2Ku availability rate had already "plunged" before December 6, 2017.

In short, plaintiffs' contention that the Court must credit their unsupported allegation that

---

[4] *See* Gitlin, *supra* n.2, caption to first embedded screenshot ("Testing Gogo Air's 2Ku service on Delta 1731, DCA to DTW, December 11th 2017.").

[5] Rabinowitz, *supra* n.2.

[6] Plaintiffs' belated reliance on articles that describe one outage on December 11, 2017 and a February 24, 2018 internal Delta memo discussing 2Ku problems "in recent months" suggests that plaintiffs consciously decided not to identify the articles in the Amended Complaint because the articles do not identify a specific date before December 11, 2017 when Delta first reported significant problems with 2Ku to Gogo.  The articles further suggest that plaintiffs' "November or December 2017" allegation was a guess extrapolated from the February 24, 2018 Delta memo's talk of issues "in recent months."  The particularity requirements of the PSLRA and Rule 9(b) cannot be satisfied in this way.

[7] Plaintiffs repeatedly misquote Thorne's statement.  He did not say that system availability went down to "about 80%."  Opp. at 10, 22.  He said it dropped to the "mid 80's."  AC ¶ 62.  And he said that the drop occurred in "winter," not before.  *Id*.

"Delta informed Gogo of 2Ku's de-icing issues in November 2017" because it is "corroborated by publicly available information that Delta had complained about 2Ku's performance in 'recent months' (preceding February 2018)" (Opp. at 12) is unfounded. Even the Amended Complaint expresses uncertainty about when Delta first reported the issues, and says "[t]his occurred as early as November *or* December 2017." AC ¶ 56 (emphasis added). And, as shown above, nothing in the articles or in Thorne's later statements corroborates with the specificity required by the PSLRA that this in fact occurred in November rather than December, or even prior to the defendants' December 6, 2017 statements. *See Zerger v. Midway Games, Inc.,* 2009 WL 3380653, at *7 (N.D. Ill. Oct. 19, 2009) (rejecting "chronological[ly] confus[ed]" allegation that decision made in October 2015 rendered August 2015 statement false when made).

Finally, Seventh Circuit law is contrary to plaintiffs' assertion that they need not identify any "other sources" on which they relied because the allegations about complaints from Delta are purportedly corroborated by published articles (which were not even mentioned in the Amended Complaint) (Opp. at 11 & n. 12). In affirming a district court's refusal to give any weight to allegations that "internal emails" showed defendants knew their statements were false when made where the complaint merely implied that the allegation came from an unnamed confidential source, the Seventh Circuit explained: "Allegations . . . merely implying[ ]unnamed confidential sources of damaging information require a heavy discount. The sources may be ill-informed, may be acting from spite rather than knowledge, may be misrepresented, may even be nonexistent—a gimmick for obtaining discovery costly to the defendants and maybe forcing settlement or inducing more favorable settlement terms." *City of Livonia Emps.' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754, 759 (7th Cir. 2013). Because plaintiffs have not alleged facts showing that defendants' statements in November and December 2017 were

false when made, the claims based on those statements fail to plead falsity.[8]

### C. Plaintiffs Fail To Plead Facts Showing That Defendants' February 22, 2018 Statements Were False When Made

As shown in our opening brief, the Amended Complaint alleges no factual basis on which to infer that defendants withheld any material information about 2Ku problems that was known to them as of February 22, 2018. Opening Br. at 14-16. Gogo's disclosure ten weeks later, on May 4, 2018, that the 2Ku problems were worse than Gogo originally thought, stemmed from different causes, and were likely to have a greater impact on Gogo's financial performance does not support the inference that the February 22, 2018 statements were false when made. *See Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, 2012 WL 1068761, at *4 (N.D. Ill. Mar. 29, 2012) ("statements made at or after the end of the class period cannot be used to show that what was said earlier was false or misleading") (quoting *Sutton v. Bernard*, 2001 WL 897593, at *4 (N.D. Ill. Aug. 9, 2001)).

Plaintiffs' sole argument in response is that the Runway Girl article shows that Delta did not believe that there was an "easy" fix for the de-icing problem and assigned its own TechOps team to work alongside Gogo to fix the 2Ku problems Delta was experiencing. Opp. at 13. As shown above, however, the Runway Girl article cannot supplement the vague and speculative allegations of plaintiffs' complaint. In any event, plaintiffs cannot claim that they were misled because defendants "did not accurately portray the severity of the issue or disclose the financial toll the problems were exacting on Gogo" (Opp. at 13), but, at the same time, the "true" state of

---

[8] This Court's decision in *DeVry*, on which plaintiffs rely (Opp. at 12), is not to the contrary. In *DeVry*, this Court acknowledged that whether the plaintiff identified internal information that contradicted the defendants' statement was "a close question," but found that the plaintiff had "an articulable reason . . . to suspect that the information showing the falsity of the 90% Statement exists in readily available form" based on allegations in a complaint and Rule 26(f) disclosures in a case brought by the FTC after obtaining the defendant's internal documents by means of a Civil Investigative Demand. 2017 WL 6039926, at *8. By contrast, plaintiffs here have not come forward with any reliable basis on which to believe that any internal documents would substantiate their claims.

affairs at the time is apparent from the articles "documented on the internet" in January and February 2018 (Opp. at 11, 13). *See Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827, 834 (N.D. Ill. 2000) ("A plaintiff cannot credibly claim to be misled by a company's attempt to hide negative information when that same information is publicly available via alternate channels.") (citing *Eckstein v. Balcor Film Investors*, 58 F.3d 11362, 1169 (7th Cir. 1995)). Either plaintiffs were misled, or the information was public knowledge. Plaintiffs cannot have it both ways.

## II.   DEFENDANTS' FORWARD-LOOKING STATEMENTS ARE NOT ACTIONABLE UNDER THE PSLRA SAFE HARBOR

In our opening brief, we showed that particular statements of future expectations made by Smagley on February 27, 2017, Rowan on August 7, November 2 and 17, and December 6, 2017, and Small on February 22, 2018 (AC ¶¶ 76, 94, 102, 110, 118, 126) are not actionable because they are protected by the PSLRA's statutory safe harbor for forward-looking statements. Opening Br. at 16-20. Plaintiffs seek to evade application of the safe harbor to those particular statements by arguing that (1) the safe harbor does not apply to forward-looking statements that are alleged to be false "due to the omission of material information," (2) whether Gogo's cautionary statements were meaningful cannot be decided on a motion to dismiss without the benefit of discovery, and (3) "statements made with actual knowledge of their falsity are not protected by the safe harbor." Opp. at 15-20. None of these arguments succeeds.

First, plaintiffs do not cite a single appellate level case, from the Seventh Circuit or any other circuit, supporting their contention that the safe harbor can never apply to any forward-looking statement alleged to be misleading because of a material omission. Nor is that surprising. The plain language of the statute expressly provides that the safe harbor applies in any private action under Section 10(b) "that is based on an untrue statement of a material fact *or omission of a material fact necessary to make the statement not misleading . . . .*" 15 U.S.C.

§ 78u-5(c)(1) (emphasis added); *see also In re Supreme Indus., Inc. Sec. Litig.*, 2019 WL
1436022, at *7 (N.D. Ind. Mar. 29, 2019) ("[T]here is no question under the statute that a
material and misleading omission can fall within the forward-looking safe harbor.") (quoting
*Harris v. Ivax Corp.*, 182 F.3d 799, 806 (11th Cir. 1999)).

Second, plaintiffs' assertion that a court cannot decide whether cautionary language is
sufficiently meaningful to qualify for the safe harbor's protection on a motion to dismiss is also
contrary to the express language of the statute, which provides that "[o]n any motion to dismiss
based upon subsection (c)(1) [the safe harbor for forward-looking statements], the court shall
consider any statement cited in the complaint and any cautionary statement accompanying the
forward-looking statement." 15 U.S.C. § 78u-5(e); *see also Johnson v. Tellabs, Inc.*, 262 F.
Supp. 2d 937, 953 n.15 (N.D. Ill. 2003) (dismissing claims based on forward-looking statements
accompanied by meaningful cautionary language under the PSLRA's safe harbor). *Asher v.
Baxter International Inc.*, 377 F.3d 727 (7th Cir. 2004), is not to the contrary. In that case, the
Seventh Circuit concluded that on the facts alleged, the court could not determine before
discovery whether Baxter omitted important variables from its cautionary language, which, like
the forecasts at issue, "remained fixed even as the risks changed." *Id.* at 734. The same cannot
be said for Gogo's cautionary language, which was updated in its 2017 10-K, filed on February
22, 2018, when the risks related to 2Ku problems had begun to materialize. *See* AC ¶ 130 ("We
have encountered delays and quality problems as we deploy 2Ku, which we are in the process of
remediating, and may continue to do so given the aggressive installation schedule that we are
undertaking . . . . If 2Ku fails to perform as expected or we fail to meet the installation timelines
and performance metrics for which we have contracted, our business, financial condition and
results of operations may be materially adversely affected."). Like the cautionary language in

numerous other cases in which claims based on forward-looking statements were dismissed under the safe harbor, Gogo's cautionary language meaningfully warned about the specific risks that could cause actual results to depart from the projections made by defendants. *See, e.g., In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1167 (N.D. Ill. 2004) ("Numerous decisions in this district and elsewhere have dismissed Rule 10b-5 claims based on similar—and often less specific—cautionary language."); *Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833, 843-46 (N.D. Ill. 2003) (dismissing claims based on forward-looking statement accompanied by meaningful cautionary language); *Johnson*, 262 F. Supp. 2d at 953-54 (same).

Third, even if Gogo's cautionary language were found to be insufficient, the safe harbor still applies to the forward-looking statements at issue in this case because plaintiffs have not alleged facts supporting any inference—much less the requisite strong inference—that any of the speakers of those statements—Smagley, Rowan or Small—actually knew at the time they made their respective statements that their expectations could not be met because of significant problems with 2Ku. *See* 15 U.S.C. § 78u-5(c)(1)(B); *see also City of Livonia*, 711 F.3d at 756 (the PSLRA "altered the landscape of federal securities fraud litigation . . . [by] requir[ing] a plaintiff who is complaining about 'forward-looking' statements—predictions or speculations about the future—to prove 'actual knowledge' of falsity on the part of defendants."). As shown in our opening brief and below, plaintiffs have not alleged a single fact to support even a weak inference that Smagley, Rowan or Small actually knew their statements were false.

## III. PLAINTIFFS FAIL TO PLEAD THAT ANY DEFENDANT ACTED WITH THE INTENT TO DEFRAUD

In our opening brief, we showed that plaintiffs fail to plead facts giving rise to a strong inference that any of the defendants acted with fraudulent intent—whether actual knowledge, as required for forward-looking statements, or recklessness, as required for the other challenged

statements. Opening Br. at 20-28. Instead of responding with well-pleaded facts, which they do not have, plaintiffs urge the Court to rely on plaintiffs' own "logic," and repeatedly state in the Opposition that their unsupported assertions of scienter are "the most logical inference" and any competing non-fraudulent inference is "illogical." *See* Opp. at 4, 14, 23, 25.

In support of their "logic"-based rather than fact-based inferences, plaintiffs rely on the same deficient allegations and premises that they claim support an inference of falsity:

- Defendants must have known about the 2Ku antenna design defect as early as February 2017 because at least some of the 94-130 planes that operated that winter must have experienced the 2Ku system degradation as a result of de-icing;

- Rowan's statements in August 2017 that new installations of 2Ku were expected to dilute ARPA in the second half of 2017 must have meant that newly installed 2Ku systems were defective and diluted ARPA because they did not have the antenna and radome fixes that seasoned aircraft supposedly had[9];

- Defendants must have known about the 2Ku antenna design defect throughout the alleged class period because they received "outage reports" and regularly monitored 2Ku's system availability statistics; and

- On May 4, 2018, Thorne disclosed that 2Ku system reliability dropped to the mid 80s in winter 2017-2018.

Opp. at 22-26. These contentions do not provide a basis to infer scienter for the same reasons that these contentions do not provide a basis to infer falsity: plaintiffs have not alleged actual *facts*, as opposed to their own speculative assumptions, and do not suffice to allege that Gogo and each of the Individual Defendants knew about any design defect or that the company's

---

[9] As noted above, the inference urged by plaintiffs requires the Court to presume that corporate executives behave irrationally. The more compelling and plausible inference is that when a new product is introduced, it takes time to educate consumers about the new product, to get them interested in the product and to get them to spend money on the product, and that this change in consumer habits and spending over time is the real reason for the difference in ARPA between new and seasoned aircraft. *See, e.g.,* Anne Sraders, *What Is the Product Life Cycle? Stages and Examples*, TheStreet (Mar. 4, 2019), https://www.thestreet.com/markets/commodities/product-life-cycle-14882534 (describing the "introduction stage" of a new product when the goals are "to build demand for the product and get it into the hands of consumers, hoping to later cash in on its growing popularity").

financial performance would suffer as a result.[10]  Plaintiffs thus have alleged no facts to support

a strong inference of fraudulent intent by any of the defendants that is "cogent and at least as

compelling as any opposing [non-fraudulent] inference." *Tellabs, Inc. v. Makor Issues & Rights,*

*Ltd.*, 551 U.S. 308, 324 (2007).  As the Supreme Court has explained, the scienter inquiry is

"inherently comparative," requiring the court to assess "[h]ow likely" it is that "one conclusion,

as compared to others, follows from the underlying *facts*."  *Id*. at 323 (emphasis added).  On the

facts as alleged in the Amended Complaint, the inference that each defendant disclosed the best

available information about 2Ku known to him (or, in Gogo's case, to the company) at the time

is far more compelling than any opposing inference urged by plaintiffs.[11]

Plaintiffs offer a few additional factors that they contend strengthen the purported

inference of scienter.  First, plaintiffs contend that because Delta was Gogo's largest client and

2Ku was a key product for Gogo, the inference of scienter "is supported by the 'core operations'

doctrine."  Opp. at 26.  But the "core operations" doctrine only supports the inference that

executives knew or were recklessly indifferent to existing facts contradicting a defendant's

public statements if the plaintiff actually alleges with specificity contradictory facts that were in

---

[10] The Seventh Circuit has rejected the "group pleading doctrine" and requires a strong inference of scienter for "each individual defendant."  *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008).

[11] This is particularly so with respect to Smagley.  Plaintiffs do not respond to and therefore concede that they have not pleaded any factual basis on which to draw even a weak inference of scienter as to Smagley.  Smagley was Gogo's CFO only until May 4, 2017 (AC ¶ 19), and the only statements attributed to him were his forward-looking statements on February 27, 2017 about an anticipated decline in cash needs in 2018 and an increase in consolidated adjusted EBITDA (AC ¶ 76).  Rather than plead facts showing what Smagley actually knew about 2Ku's performance and reliability at that time, plaintiffs ask the Court to infer that because winter 2016-17 was ending, "Smagley knew about the 2Ku's design defect and that the costs associated with fixing it would increase exponentially the following year."  AC ¶ 77.  The Amended Complaint alleges no facts showing that de-icing issues caused any service reliability problems in winter 2016-17, or that any such problems were caused by a design defect that would be expensive to fix.  In the absence of such facts, the non-fraudulent inference that Smagley simply did not know in February 2017 that 2Ku was experiencing significant problems caused by a design defect that would be costly to remedy is far more compelling than the fraudulent inference urged by plaintiffs.

existence at the time.  *See Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 706-07 (7th Cir. 2008).  Plaintiffs have not done so here; the core operations doctrine thus does not apply.

Second, plaintiffs contend that the short interval between Small's departure and the May 4, 2018 announcement also supports and strengthens an inference of scienter.  Opp. at 26-27.  Plaintiffs are wrong again.  "Absent allegations that the resignation at issue was uncharacteristic when compared to the defendant's typical hiring and termination patterns or was accompanied by suspicious circumstances," the inference that the employee was forced to resign because of fraud "will never be as cogent or as compelling as the inference that the employee[ ]resigned or [was] terminated for unrelated personal or business reasons."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009).

Third, plaintiffs contend that the inference of scienter is bolstered by "[d]efendants' claims that they were highly focused on monitoring the costs and status of 2Ku systems, and their responses to detailed analyst questions on those topics."  Opp. at 27.  But again, plaintiffs have not alleged actual facts that were apparent to defendants from any such monitoring but not disclosed.  *See Cornielson v. Infinium Capital Mgm't, LLC*, 916 F.3d 589, 602 (7th Cir. 2019) ("[A] complaint fails to satisfy the PSLRA's particularity requirements by making conclusory allegations of scienter derived from a defendant's mere access to information.").

Fourth, plaintiffs concede that they have not alleged any motive to commit fraud for any defendant and cite Supreme Court and Seventh Circuit decisions in *Tellabs* holding that the absence of motive was "not fatal" to the securities fraud claim in that case.  Opp. at 28.  But the Supreme Court also explained in *Tellabs* that "the significance that can be ascribed to an allegation of motive, or lack thereof, depends on the entirety of the complaint."  551 U.S. at 325. The Seventh Circuit has also noted that "[w]ithout a motive to commit securities fraud,

businessmen are unlikely to commit it." *City of Livonia*, 711 F.3d at 758. Thus, the inference of fraud is much weaker in the absence of motive allegations, and requires plaintiffs to plead other facts to support a strong inference of scienter. As shown above, plaintiffs have not done so here.

Moreover, plaintiffs do not deny that a defendant's significant stock purchase during the alleged class period can negate an inference of scienter. *See* Opening Br. at 26-27. Gogo's then-CEO Michael Small bought nearly $900,000 of Gogo stock on November 6, 2017 at a time when plaintiffs allege the stock price was inflated. Plaintiffs contend he did so to prop up the company's stock price so that Gogo could obtain debt financing and he could keep his job. But the idea that Small would throw away his own money to buy stock at what he knew was an inflated price is neither cogent nor compelling. Further, courts regularly refuse to infer scienter from generalized motives common to all executives, such as the desire to keep one's job or to obtain corporate financing. *See, e.g., Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 939-40 (7th Cir. 2018); *Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 679 F.3d 952, 956 (7th Cir. 2012). This Court should do the same.[12]

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint with prejudice.

Dated: May 9, 2019

Respectfully submitted,

NEAL, GERBER & EISENBERG LLP

/s/  Andrew G. May
Jonathan S. Quinn
Andrew G. May
Two North LaSalle Street, Suite 1700
Chicago, Illinois 60602
Telephone: (312) 269-8000

---

[12] For the reasons discussed above and in our opening brief, plaintiffs' failure to plead a primary violation of Section 10(b) requires dismissal of their Section 20(a) claim as well.

jquinn@nge.com
amay@nge.com

-and-

SHEARMAN & STERLING LLP
Jerome S. Fortinsky (admitted *pro hac vice*)
Brian H. Polovoy (admitted *pro hac vice*)
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
jfortinsky@shearman.com
bpolovoy@shearman.com

*Attorneys for Defendants Gogo Inc.,
Michael J. Small, Norman Smagley,
Barry Rowan and John Wade*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that he caused a copy of ***Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Amended Complaint*** to be electronically filed using the CM/ECF system, which will send notice of this electronic filing to all counsel of record receiving electronic notification on May 9, 2019.

/s/       *Andrew G. May*